## Frank P. Kenyon and another v. Francisco P. Woodruff.

*Fraud: Joint defendants: Concert of action: Evidence.* Where one who as deputy sheriff has taken property at the request of one falsely claiming to be owner, and removed and delivered it to one asserted by the latter to have a valid chattel mortgage upon it, and been mulcted in damages therefor by the real owner, brings his action for the fraudulent misrepresentations, evidence that shortly after the removal of the property the pretended mortgagee stated to the plaintiff it had been stolen from him and he guessed it was on its way to Kansas, while in fact it was shortly thereafter in public use at the village where defendants both resided, is held admissible as tending somewhat to show a concert of action between defendants in running off and concealing the property.

*Evidence: Advice of counsel: Hearsay.* It is not error for the court to interrupt a witness who is proceeding, after objection by counsel on the other side, to testify to advice of counsel, which so far as the record shows appeared to be mere hearsay.

*Fraud: Partial statements: Concealment of facts: Deceit.* Designed partial

KENYON v. WOODRUFF.

statements which deceive, and concealment of facts such as to make those declared partial and misleading, are fraudulent in law.

*Principal and surety: Fraudulently inducing another to commit a wrong.* The relation of principal and surety grows out of the consent of all the parties; and the principles belonging to it, in respect to the right of recovery over, can have no necessary application to a case where one without intentional wrong on his part has been induced by the fraud of another to do an act for which he has been held accountable as for a wrong committed against a third party.

*Fraud: Conversion: Measure of damages.* Where parties by fraud have induced another innocently to convert the property of a third for their benefit, and have undertaken his defense of a trover suit brought by the latter, and have failed, and execution has been levied on his property sufficient to satisfy the judgment, the measure of damages in his action against them for the fraud, is the amount of the judgment against him, with interest, though he has not in fact paid such judgment.

*Trover: Judgment: Title.* The recovery in the trover suit would put an end to any right of the plaintiff therein to reclaim the property, and would leave the title in those at whose instance and for whose benefit the conversion was brought about.

*Trover: Joint conversion: Judgment and execution against one: Election.* A recovery and execution levy against one of several who were jointly guilty of conversion, precludes recourse against the others on account of the same conversion; the principle as to joint trespassers being applicable.

*Heard January 7.     Decided January 21.*

Error to Saginaw Circuit.

*W. A. Clark,* for plaintiffs in error.

*Dan P. Foote,* for defendant in error, as to the measure of damages, cited: *Train v. Gold, 7 Pick., 379; Chicago v. Robinson, 2 Black, 418; Beers v. Pinney, 12 Wend., 309; Blasdale v. Babcock, 1 Johns., 516; Barney v. Dewey, 13 Johns., 224; Rockafellow v. Donnelly, 8 Cow., 639; Mayor v. Railroad Co., 49 N. Y., 659; Chace v. Hinman, 8 Wend., 454; Webb v. Pond, 19 Wend., 423.*

GRAVES, J :

Woodruff was deputy sheriff, and Kenyon called on him and requested him to seize two billliard tables on a chattel mortgage which he, Kenyon, had made to Goodale, and when taken, to send the tables to Goodale at Chesaning.     A

paper purporting to be a copy of a mortgage given on the tables by Kenyon to Goodale a long time before was shown, together with a certificate of filing by the township clerk. Kenyon made certain statements concerning the correctness of the transaction, and Woodruff seized the property, which was then in the care of the Michigan Central Railroad Company, and sent it to Goodale at Chesaning as requested. Subsequently one Schulenburg, claiming that the property was in him when Woodruff took it and sent it to Chesaning, sued Woodruff in trover, and counted on these doings by Woodruff as a conversion. Kenyon and Goodale together took upon themselves the defense of this suit brought by Schulenberg, but judgment passed against Woodruff for the value of the tables and costs.

Schulenberg subsequently sued out execution and caused it to be levied on lands of Woodruff worth many times the amount of the judgment, and in due time the land was sold on the execution for an amount sufficient to satisfy it.

In this state of things Woodruff sued Kenyon and Goodale in tort, and alleged that they brought him to take and send the tables to Chesaning by fraudulent representations respecting the character and history of the mortgage from Kenyon to Goodale, and claimed damages to the amount of the judgment obtained by Schulenberg, with the interest upon it.

Some time after this suit was brought, the sale on Schulenberg's execution was set aside on Woodruff's motion, for irregularity, and a new levy was very soon made on sufficient of Woodruff's lands to obtain satisfaction. That Woodruff was abundantly responsible for the amount, was proved and is not questioned. Woodruff's suit against Kenyon and Goodale was afterwards brought to trial, and the court, although the judgment against Woodruff had not yet been collected or paid, allowed him to recover an amount equal to Schulenberg's judgment, with the interest which had grown upon it.

Kenyon and Goodale now seek a reversal of that judgment on account of ·alleged errors committed on the trial.

Several exceptions were taken to rulings admitting and rejecting evidence, but the counsel for plaintiffs in error notices but two in his brief, and abandons the rest.

We think neither of those referred to in the brief merit particular discussion.   It may be well enough to advert to them.   Woodruff went to Chesaning to see the parties about the tables, and he testified that Goodale told him he received them at the depot, and took them to his store and left them outside until evening, and then went out to find them, but they had been stolen, and he guessed they were on the way to Kansas.   Further evidence being given to show that the tables were soon after put up and in use at Chesaning, Woodruff was permitted, under the objection that it was not material, to testify that not long after the statement of Goodale that the tables had been stolen, and that he guessed they were on the way to Kansas, they were in public use at Chesaning.   It does not appear expressly how long this was after the alleged taking on Kenyon's request, but the facts tend to show it was shortly after.   Kenyon and Goodale both resided at Chesaning.   The evidence had some bearing upon the question as to whether those parties were acting in concert in running off and concealing the tables.   Besides, evidence had been given already to the same effect, and on the admission of which no error is assigned.   We think the exception should be overruled.

The point that the court erred in stopping Kenyon whilst proceeding to testify to some advice which his counsel, Mr. Clark, had given him is not well taken.   We do not know what the advice was, or to what it related, as no offer or explanation seems to have been made.   According to appearances, it would have been mere hearsay, and we are unable to conjecture any ground upon which it would have been proper to have permitted the witness to state it against objection ; and the interruption by the court was after objection by counsel on the other side.

An inspection of the record discloses that the fraudulent representations relied on, and which were set forth in a

33 MICH.—40.

pretty general way in the declaration, consisted in stating what was particularly and directly untrue, and also in stating but part of the truth in respect to other matters.

And the court in charging the jury referred to designed partial statements, and their intended tendency and influence, and in so doing spoke of concealment of facts which made those declared partial and fraudulent.

After a careful perusal of the evidence and the charge as a whole, we think the plaintiffs in error have no reasonable ground of complaint against the instructions to the jury, unless there was error in allowing the judgment against Woodruff, with the interest upon it, to be taken as a measure of recovery; and this is the substantial question in the case.

The counsel for plaintiffs in error claimed that the parties were as principals and surety, and that the position of Woodruff was analogous to that of surety for Kenyon and Goodale, and that he was not entitled to recover against them except upon the principle of compensation; and hence, as he had not paid the judgment obtained by Schulenberg, he was not entitled to recover the amount of it.

He also insisted that this latter judgment being still unpaid, Schulenberg may hereafter sue Kenyon and Goodale, or either of them, as co-wrong-doers with Woodruff.

There is no analogy between the relations of the parties in this controversy and the relations which exist between principal and surety, and there is no ground for applying the same reasoning.

The relation of principal and surety grows out of the consent of all the parties, and the principles which belong to it, in regard to the right of recovery over, can have no necessary application to a case where the relation does not arise from consent, but is caused by a positive wrong committed by one against another.

It would be very unreasonable to hold that when one is drawn by the fraud of another to perform an act which gives a third party a perfect right of action against him, and which

has eventuated in a judgment which is indisputably collectible of him, the wrong-doer may still insist that his responsibility to the party he has thus by his fraud caused to be accountable to the third party, is required to be exclusively governed by those rules which naturally and justly apply where one by choice assumes a relation of accountability on behalf of one to another. The disparity between the cases is too obvious to justify a particular discussion.

In view of the facts and the finding it must be assumed that the plaintiffs in error, by means of a fraud they practiced, drew the defendant in error to convert the billiard tables for their benefit; that he acted innocently upon the faith of their representations by words and conduct, but thereby subjected himself to Schulenberg's action; that plaintiffs in error assumed the defense of that action, and implied that it was one they were bound to take care of; that final judgment was recovered, and defendant in error was, and is, entirely responsible; that prior to the beginning of this suit. by Woodruff, Schulenberg had sued out execution on his judgment and caused it to be levied on land of Woodruff worth several times the amount.

The recovery of Schulenberg against Woodruff for the conversion of the tables put an end to Schulenberg's right to reclaim them *(Brady v. Whitney, 24 Mich., 154)*, and left them as the property of plaintiffs in error, at whose instance and for whose sole benefit the conversion was brought about.

And when, after his recovery in trover against Woodruff, Schulenberg sued out execution and proceeded to enforce collection of the judgment under it, he thereby elected to look .to Woodruff alone, and barred himself against having recourse against Kenyon and Goodale, or either of them, on account of the same conversion. The rule was so settled in this court in *Boardman v. Acer, 13 Mich., 77,* in a case concerning joint trespassers, and the principle must equally apply where persons join in conversion.

The liability of defendant in error to Schulenberg is pos-

itively fixed, and his responsibility is unquestioned.     He cannot avoid paying the judgment.     The plaintiffs in error have got the property through their fraudulent procurement of Woodruff's act of conversion, and the judgment against Woodruff for that conversion, and they are liable to no one except Woodruff.     This suit is for the damage caused by the fraud of Kenyon and Goodale.

Under these circumstances, I think the court did not err in allowing Woodruff to recover damages to an amount equal to the judgment obtained against him by Schulenberg, with the interest upon it, and that the judgment of the circuit court should be affirmed, with costs. .

The other Justices concurred.