PEOPLE v. EVANS

1. WITNESSES—CREDIBILITY—INTEREST—BIAS.
   The interest or bias of a witness goes directly to his credibility
   and must determine with the jury how far his evidence is to
   be regarded as proven.

2. CRIMINAL LAW—WITNESSES—INTEREST—BIAS—EVIDENCE—ADMIS-
   SIBILITY.
   The interest, bias, or prejudice of a witness in his relationship
   with either the prosecution or the defense, if denied, may be
   shown upon cross-examination or by rebuttal testimony.

3. WITNESSES—INTEREST—BIAS—EVIDENCE.
   The interest or bias of a witness may be shown by proving,
   among other things, that he was hired to procure evidence, or
   that he expected pay, or that he anticipated collecting a reward.

4. CRIMINAL LAW—WITNESSES—CODEFENDANT TESTIFYING—CREDIBIL-
   ITY—INTEREST—BIAS—QUESTION OF FACT.
   The interest or bias of a testifying codefendant may be shown
   in the same manner as the interest or bias of an ordinary wit-
   ness; a codefendant's credibility, like that of any other wit-
   ness, is exclusively a question for the trier of fact.

5. CRIMINAL LAW—WITNESSES—CODEFENDANT TESTIFYING—BIAS—
   EVIDENCE—HOPE OF LENIENCY.
   Evidence showing that a codefendant who has testified for the
   prosecution in the defendant's trial had a belief or even a

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses § 706.
[2] 58 Am Jur, Witnesses §§ 715, 716, 719, 721.
[3] 58 Am Jur, Witnesses §§ 708, 713.
[4] 58 Am Jur, Witnesses §§ 681, 706.
[5] 58 Am Jur, Witnesses §§ 681, 706, 713.
[6] 58 Am Jur, Witnesses §§ 681, 713.
   5 Am Jur 2d, Appeal and Error § 892.
[7] 29 Am Jur 2d, Evidence § 791.
[8] 58 Am Jur, Witnesses §§ 554, 868.

hope on his part that he would secure immunity or a lighter sentence, or any other favorable treatment, in return for his testimony is properly admitted even if it be fully conceded that the codefendant had not the slightest basis for his belief from the prosecution.

6. Criminal Law — Codefendant Testifying — Bias — Evidence — Hope of Leniency — Plea of Guilty — Admissibility.

Refusal to instruct the jury that the defendant's codefendant had pled guilty to manslaughter was reversible error where the defendant timely requested the instruction, the codefendant, testifying in his own behalf at his and the defendant's joint trial for a murder committed during a robbery, confessed his part in the crime, testified that the defendant had fired the fatal shot and, after the defense and prosecution has rested, entered his plea of guilty to manslaughter, even though the defendant had been allowed ample cross-examination of the codefendant concerning his bias or interest and had been allowed rebuttal testimony, because the plea was proper evidence showing the existence of a hope or belief of the codefendant that he would secure a lighter sentence or favorable treatment in return for his testimony and, thus, bore on the codefendant's credibility.

7. Criminal Law—Evidence—Newspaper Photographs—Admissibility—Basis of Identification—Relevancy.

Admitting two newspaper pictures of the defendant and allowing the prosecution witnesses to testify that they recognized the defendant's picture in the newspapers and identified the person pictured as being the man at or near the scene of the holdup with which the defendant was charged was not error, because the pictures and the testimony regarding them were relevant and material as part of the basis upon which the witnesses made their identifications of the defendant.

8. Homicide — Murder — Defendant Testifying — Evidence — Absence of Violent Crimes — Admissibility.

Refusal to allow the defendant, charged with first-degree murder to explain to the jury that he had never been involved in a violent crime was error; the defendant should be allowed, if he wishes, to tell to the jury the names or the general nature of the crimes of which he has been convicted.

Appeal from Recorder's Court of Detroit, Samuel H. Olsen, J.  Submitted Division 1 October 13, 1970,

at Detroit. (Docket No. 5735.) Decided February 15, 1971. Leave to appeal denied June 17, 1971, 385 Mich 756.

Virgil Lee Evans was convicted of first-degree murder. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Carl Levin* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: LESINSKI, C. J., and J. H. GILLIS and DAN-HOF, JJ.

DANHOF, J. Virgil Lee Evans was convicted by a jury of first-degree murder committed during a grocery-store robbery that occurred on October 2, 1967, MCLA § 750.316 (Stat Ann 1954 Rev § 28.548). He has appealed alleging several errors.

Initially, he asserts that it was error for the trial court to refuse to instruct the jury that his codefendant, Richard Tanner, had pled guilty to manslaughter and to prohibit defense counsel from arguing to the jury the effect of that fact on the credibility of both Tanner and Evans.

After the prosecution presented its case and Evans his defense, codefendant Tanner took the stand *in his own behalf.* He testified that he and Evans had held up the grocery store in question and that Evans had fired the fatal shot. Several of the questions by Tanner's lawyer were leading and

not only did Evans' lawyer object, but the prosecutor stated that he would like to get the answers from the witness rather than every word being placed there by counsel. The jury was excused at the request of Evans' counsel and during the discussion which followed concerning leading questions by Tanner's lawyer the prosecutor said,

"*Mr. Bartholomew:* If the court please, just before the jury comes back, I appreciate all that the court has said. However, I would strongly make this observation—and all of us are seasoned enough to pretty well understand what is going on—except, I think this record should, as much as possible, be devoid, as your Honor has indicated, of leading questions because of an instance of this kind—I, on behalf of the state, would rather see the explanation come from the witness' mouth, himself."

Tanner also testified in response to leading questions by his attorney that on November 1, 1967, at about 4 p.m. after being fully advised of his constitutional rights by his lawyer he had made a voluntary statement to the assistant prosecuting attorney because he wanted to get it off his mind.

Evans' attorney asked Tanner if he realized that his own testimony could convict him of first-degree murder. Tanner replied, "Yes". Tanner denied expecting any benefit.

Evans then took the stand for the purpose of rebuttal and testified that Tanner had told him that officer Smith promised a reduction of the charge against him to manslaughter if Tanner would confess and implicate Evans.

Tanner returned to the stand to deny that he had told Evans of any promise of leniency in exchange for his testimony or that he knew an officer Smith. On cross-examination Tanner denied that anyone

promised that he would be permitted to plead guilty to manslaughter in exchange for his testimony.

Officer Smith then testified that he had had no conversation with Tanner about the case.

All sides rested and *immediately thereafter, without a recess,* the jury was excused and Tanner offered a plea of guilty to manslaughter.

The following colloquy occurred:

*"The Court:* * * * First of all, Mr. Bartholomew, what is the attitude of your office if the court were to accept a plea to the lesser offense of manslaughter in this case?

*"Mr. Bartholomew:* If the court please, based on the peculiar and the particular circumstances of this case since its inception, taking all of that into account, it is the position of our office that Mr. Tanner in effect having made a clean breast as he has in the case, that we would have no objection to a plea of manslaughter in his regard.

"Among other things, he was not the trigger man. He was not involved in that physically or directly, and based on that we would have no objection to the entry of such a plea. I think—Mr. Wagner, will you step up please?

"Officer Wagner is the officer in charge. Taking into account all the circumstances in the case, as you have known them from the beginning, and on behalf of your department, do you feel that the ends of justice would be served if the court saw fit to accept a plea to manslaughter in this case from Mr. Tanner?

*"Mr. Wagner:* Yes, I do.

*"The Court:* Does that reflect the attitude of your superiors?

*"Mr. Wagner:* Yes, sir.

*"Mr. Bartholomew:* I think I can state further for the record that since the possibility of this came about, and in the absence of the jury, I have discussed the matter with the Yezbick family, and though they, of course, feeling as they do in terms

of the unfortunate situation, it is my understanding from them that they would have no objection if the court saw fit to accept also such a plea to manslaughter.

"*The Court:* Have you discussed it with the superiors in your office, Mr. Bartholomew?

"*Mr. Bartholomew:* Yes, your Honor, I have spoken to all of my superiors, the chief of the criminal division and down the line and having discussed it, as I say, because of the peculiar circumstances of this case, they likewise feel and I speak on behalf of the officers now that the ends of justice would be served."

Tanner then pleaded guilty, repeating what he had testified to as his and Evans' participation in the crime, and the court accepted his plea to manslaughter.

Tanner and his lawyer were then excused from the courtroom and the jury returned. The court gave the jury this instruction:

"*The Court:* You will notice that defendant Tanner is no longer present in court. From this point on, you are not concerned with the guilt or innocence of defendant Tanner. From this point on, you are only concerned with the guilt or innocence of defendant Evans. You must not give sway to any inferences as to why defendant Tanner is no longer in court.

"You must decide the guilt or innocence of defendant Evans solely upon the testimony which you heard here in open court."

The court also denied Evans' lawyer's written request that the court advise the jury that Tanner had pled guilty to manslaughter.

In denying the defendant's motion for a new trial the judge stated in part:

"Defense counsel claims error in the court's refusal to instruct the jury as requested, that they

could consider the fact that Tanner had pleaded guilty to manslaughter. Counsel urges that they had a right to consider this in determining his credibility as a witness, because in his testimony he had denied promises or expectations of benefits. On this point counsel for Evans admits that he was unable to find supporting authorities. The court has found none. In the court's opinion *it would have been prejudicial error to give the charge requested.*

\* \* \*

"On the contrary, on the question of possible jury prejudice, the fact that one of two codefendants had already pleaded guilty during the trial, would have resulted in prejudicing the jury against the other codefendant, jointly charged. Of course refusal was not erroneous, but in fact was a protection for codefendant Evans."

On appeal defense counsel has cited no Michigan cases directly in point. Nevertheless, we think his argument is meritorious. According to 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 439, p 542, the interest or bias of a witness goes directly to his credit and must determine *with the jury* how far his evidence is to be regarded as proven. It is permissible to show upon cross-examination or by rebuttal testimony, if denied, that a witness is interested, biased, or prejudiced in his relation with either the prosecution or the defense. To prove interest or bias it may be shown, among other things, that the witness was hired to procure evidence, or expected pay, or that he expected to collect a reward.

We see no reason to restrict the proof of bias or interest to an ordinary witness as opposed to a codefendant who testifies. The credibility of an accomplice, like that of any other witness, is exclusively a question for the jury. *People* v. *Walker* (1966), 3 Mich App 230.

Defendant has relied on three federal cases in support of his position that the jury should have been informed of Tanner's plea. They are *Sandroff* v. *United States* (CA6, 1946), 158 F2d 623, *Spaeth* v. *United States* (CA6, 1956), 232 F2d 776, and *United States* v. *Hogan* (CA3, 1956), 232 F2d 905. All are distinguishable on the basis that they concerned limitations on cross-examination, whereas in the present case the trial judge did allow adequate cross-examination of Tanner regarding his interest or bias and also rebuttal testimony. However, some of the language from the *Sandroff* opinion, p 629, quoting from an earlier decision *Farkas* v. *United States* (CA6, 1924), 2 F2d 644, 647 is pertinent. The quotation is:

" 'The prosecuting witnesses, before the time of the trial, had pleaded guilty to an indictment in the Federal court; the verdict of guilt or innocence in the instant case depended primarily upon their credibility as against that of defendant who testified in denial of the demands and threats. *As bearing upon their credibility, motive for false accusations, as well as bias, was vitally relevant, and testimony tending to show such motive was entirely competent. Concededly promises of immunity are admissible; they are, however, rarely made.* Inasmuch as the question involved is the motive for testifying falsely and therefore the state of mind of the prosecuting witnesses, the relevant evidence is not alone the acts or attitude of the district attorney but anything else that would throw light upon the prosecuting witnesses' state of mind. *It is therefore entirely proper, either by cross-examination of the witness himself, or otherwise, to show a belief or even only a hope on his part that he will secure immunity or a lighter sentence, or any other favorable treatment, in return for his testimony, and that, too, even if it be fully conceded that he had not the slightest basis from any act or word of the district attorney for*

*such a belief or hope.* The fact that despite a plea of guilty long since entered, the witness had not yet been sentenced, is proper evidence tending to show the existence of such hope or belief.

" 'The trial judge, although at one time during the taking of testimony he had so ruled, later sustained the objection to similar testimony, and finally not only refused an instruction that the jury might consider the fact of the delayed sentence as bearing on such hope, but expressly instructed counsel that they must not argue the matter as affecting the motives of the witnesses.

" *'In our judgment, this was such error as to compel a reversal* in the instant case.' " (Emphasis supplied.)

In the present case the trial court kept from the jury, *over the defendant's objection,* the fact that his codefendant had pled guilty to manslaughter. The fact that the plea had been made and accepted was proper evidence tending to show the existence of a hope or belief on Tanner's part that he would secure a lighter sentence or favorable treatment in return for his testimony. Defense counsel should have been permitted to argue the matter as affecting Tanner's and Evans' credibility as witnesses. We hold that since the defendant's attorney timely requested an instruction to the jury advising it that the codefendant had pled guilty to manslaughter, it was reversible error not to give it. It was for the jury to decide what effect, if any, this fact had on the credibility of Tanner and Evans. While the trial judge may have been right in thinking that the requested charge would have resulted in prejudicing the jury against Evans, defense counsel thought otherwise; and we think the decision was his to make. See *People* v. *Abernathy* (1971), 29 Mich App 558.

Upon defendant's motion to bring before the jury the fact of his codefendant's plea of guilty to a lesser

offense after the defense rested its case, where the issue of promise was raised during trial, the court should have allowed the attorney to argue the *record* of the plea made in this case or in the alternative to *sua sponte* reopen the case to allow the defendant to offer proof on this point.

*People* v. *Sawicki* (1966), 4 Mich App 467, cited by the trial court, is distinguishable because in that case the defense counsel was not restricted from bringing out that the alleged accomplice had pled guilty some seven months previously and had not yet been sentenced at the time of trial. The court held that a trial judge is not required to comment in his instructions concerning a witness's interest since it bears upon the question of credibility which is reserved to the jury. That is not the issue in the case presently before us.

This Court recently held in *People* v. *Bortnik* (1970), 28 Mich App 198, that it was reversible error to hold that communications between an alleged accomplice, Craddock, and his attorney were privileged when Craddock had testified that he and the defendant had committed the crime charged and defense counsel sought to discredit Craddock's testimony by showing that Craddock, through his attorney, had agreed to implicate the defendant in exchange for a reduced charge against Craddock. This Court stated that the trial court's ruling severely hampered the defendant in his defense as it prevented him from attacking Craddock's credibility.

Similarly, in the present case the trial court's refusal to alow the jury to be told of the fact that the codefendant had pled guilty to manslaughter severely hampered the defendant in his defense which consisted of alibi plus an attack on his codefendant's credibility.

Since we have found reversible error, it is not necessary to discuss all the other issues raised because some of them will not occur during the new trial. However, it is necessary to rule on whether it was error for the trial court to admit two newspaper pictures of the defendant as exhibits and for prosecution witnesses to testify that they recognized the defendant's picture in the newspapers and identified the person pictured as being the man at or near the scene of the holdup. The defendant has cited no cases in support of his position. We find no error because the pictures and the testimony regarding them were relevant and material as part of the basis upon which the witnesses made their identifications of the defendant.

The other issue requiring a ruling is whether the court erred in not allowing the defendant to explain that he had never been involved in a violent crime. We hold that upon retrial the defendant should be permitted to state to the jury, if he desires to do so, the names or general nature of the crimes of which he has been convicted.

Reversed and remanded for a new trial.

All concurred.