PEOPLE v ATKINS

Docket No. 54998. Argued October 8, 1974 (Calendar No. 2).—Decided
July 8, 1976.

Clarence Atkins was convicted of the sale of heroin by a jury in
Kalamazoo Circuit Court, Donald T. Anderson, J. The Court of
Appeals, R. B. Burns, P. J., and T. M. Burns and Peterson, JJ.,
affirmed (Docket No. 15674). Testimony by an addict-informer
supplied the only evidence directly linking the defendant with
the sale. The fact of the informer's history of heroin use, his
criminal record and his possible motives for fabrication were
explored by defense counsel on cross-examination. No special
cautionary instructions pertaining to the informer's credibility
were requested or given. After the defendant was convicted an
order of *nolle prosequi* was granted in a charge of breaking and
entering against the informer in recognition of his assistance in
narcotics prosecutions. Defendant appeals. In an opinion by
Justice Fitzgerald, joined by the Chief Justice and Justices
Williams and Coleman, it was *held:*

1. Failure of the trial court to instruct the jury *sua sponte*
that the testimony of an addict-informer was to be received
with caution does not require reversal. The jury was fully
apprised of the criminal past of the informer and his possible
motives for testifying.

2. Uncorroborated testimony of an addict-informer is suffi-
cient as a matter of law to make an issue for the jury of the
defendant's guilt and the jury may convict on that testimony
alone.

3. It is incumbent upon the prosecutor and the trial judge to
disclose to the jury upon the request of defense counsel a grant
of immunity or other leniency, or reasonable expectations of
leniency resulting from contact with the prosecution. However,
the prosecutor is not required to disclose that although there is

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 6] 75 Am Jur 2d, Trial § 687.
[2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 47.
[3] 81 Am Jur 2d, Witnesses § 58.
[5] 75 Am Jur 2d, Trial § 413 *et seq.*
[7–10] 75 Am Jur 2d Trial §§ 818–820.

no agreement at the time of trial, he intends to recommend some sort of consideration for the witness. The jury was made aware by means of the cross-examination by defense counsel of the facts which might have motivated the informer in giving certain testimony, and failure to disclose the possibility of future favorable treatment for the informer testifying against the defendant did not mislead it.

Justice Levin, joined by the Chief Justice and Justice Williams, concurred in a separate opinion:

1. Defense counsel may have argued in this case that the witness had a justifiable expectation that by testifying for the people he might obtain favorable treatment. In the context of a statement by defense counsel that he intended to argue that in the mind of the witness there might be an agreement and the failure to record the closing arguments, however, reversible error cannot be predicated in this case.

2. The prosecutor has an affirmative duty to disclose reasonable expectations a witness has of leniency as well as any promise of leniency. He violates this duty if he fails to correct testimony which gives a false impression that a witness has not been promised consideration for his testimony. A statement by an accomplice-informer witness that no promise has been made to him is misleading, although no positive promise has been made, if he has a reasonable expectation of leniency or other reward.

3. If there is an agreement with a prosecution witness, it must be disclosed to the jury. If there is no agreement and charges of law violation have been or could be lodged against the witness or sentencing has been deferred, and in similar cases the prosecutor has refrained from prosecuting or has granted or sought charge reduction or leniency in sentencing for witnesses who assisted the prosecution, those facts and their significance should be fully disclosed and explained to the jury.

4. The practice of granting leniency to accomplice-informer witnesses is well known to judges, and a judge should, without a request from defense counsel, require a statement to the jury of the practice, or either take judicial notice of or permit the defendant to prove the practice.

47 Mich App 558; 209 NW2d 735 (1973) affirmed.

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—INFORMERS—CREDIBILITY— CAUTIONARY INSTRUCTIONS.

Failure of the trial court to instruct the jury *sua sponte* in a trial

for sale of heroin that the uncorroborated testimony of an addict-informer was to be received with caution was not reversible error where the jury was fully apprised of the informer's criminal record and his possible motives for testifying through cross-examination by defense counsel.

2. DRUGS AND NARCOTICS—SALE OF HEROIN—SUFFICIENCY OF EVIDENCE.

Uncorroborated testimony of an addict-informer in a trial for sale of heroin is sufficient as a matter of law to make an issue for the jury of the defendant's guilt and the jury may convict on that testimony alone.

3. CRIMINAL LAW—WITNESSES—INFORMERS—FAVORABLE TREATMENT—DISCLOSURE.

A jury in a trial for sale of heroin was not misled by a failure of the prosecution to disclose the possibility of future favorable treatment in other prosecutions for an addict-informer testifying against the defendant where no agreement between the witness and the prosecution existed at the time of trial, and the jury was made aware by means of cross-examination of the witness by defense counsel of the facts which might have motivated the witness in giving certain testimony.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—INFORMERS—CREDIBILITY—CAUTIONARY INSTRUCTIONS.

Statute and court rule condition the requirement of an instruction to the jury on a request for one; a cautionary instruction is appropriate where the uncorroborated testimony of an addict-informer is the only evidence linking an accused with an alleged offense, but there must be a proper request for the instruction (MCL 768.29; MSA 28.1052, GCR 1963, 516.1, 516.2).

5. CRIMINAL LAW—TRIAL—EVIDENCE—TRIER OF FACT.

The trier of fact in a criminal case, particularly the jury, has the right to believe or disbelieve, in whole or in part, any of the evidence presented.

6. CRIMINAL LAW—ACCOMPLICES—CREDIBILITY—INSTRUCTIONS TO JURY.

It is incumbent upon the prosecution upon request of defense counsel to disclose to the jury that an accomplice or coconspirator has been granted immunity or other leniency, or has a reasonable expectation of leniency resulting from contact with the prosecutor, to secure his testimony, and if that fact comes to the judge's attention it is incumbent upon the judge to disclose it to the jury upon request of defense counsel.

CONCURRING OPINION

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

See headnotes 1 and 2.

7. CRIMINAL LAW—ACCOMPLICES—CREDIBILITY—DISCLOSURE.

The prosecution has an affirmative duty to disclose to the jury that an accomplice or coconspirator has been granted immunity or other leniency, or has a reasonable expectation of leniency resulting from contact with the prosecutor, to secure his testimony; a prosecutor violates that duty if he fails to correct a false impression that a witness has not been promised consideration for his testimony.

8. CRIMINAL LAW—ACCOMPLICES—CREDIBILITY—DISCLOSURE.

The practice of granting leniency to accomplice-informer witnesses is well known to judges, and a judge should, without a request from defense counsel, require a statement to the jury of the practice, or either take judicial notice of or permit the defendant to prove the practice.

9. CRIMINAL LAW—WITNESSES—CREDIBILITY—DISCLOSURE.

The prosecutor has an affirmative duty to disclose reasonable expectations a witness has of leniency as well as any promise of leniency; he violates this duty if he fails to correct testimony which gives a false impression that a witness has not been promised consideration for his testimony. A statement by an accomplice-informer witness that no promise has been made to him is misleading, although no positive promise has been made, if he has a reasonable expectation of leniency or other reward.

10. CRIMINAL LAW—WITNESSES—CREDIBILITY—DISCLOSURE—PRESERVING QUESTION.

Reversible error cannot be predicated on asserted failure to disclose to the jury that there was a possibility of future favorable treatment by the prosecution for an addict-informer witness in a case where defense counsel announced that he intended to argue to the jury that the witness thought he had an agreement with the prosecutor but closing arguments were not recorded so that it cannot be known how the case went to the jury.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Donald A. Burge*, Prosecuting Attorney, and *Stephen M. Wheeler*, Chief of Appellate Division, for the people.

*Daudert & Barron* for defendant.

FITZGERALD, J. Defendant Clarence Atkins stands convicted by a jury of sale of heroin.[1] His conviction was affirmed by the Court of Appeals at 47 Mich App 558; 209 NW2d 735 (1973). We likewise affirm after having examined and answered the following questions in the negative:

(1) Whether reversal is required because the trial court did not *sua sponte* instruct the jury that the testimony of an addict-informer was to be received with care and caution;

(2) Whether the uncorroborated testimony of an addict-informer is insufficient as a matter of law to make a jury-submissible issue on defendant's guilt; and

(3) Whether the jury was misled by a failure to disclose the possibility of future favorable treatment for the addict-informer testifying against defendant.

The indictment alleged that the unlawful sale took place on or about March 12, 1971, in the City of Kalamazoo. Testimony at trial indicated that in the afternoon of that date, one Edward Nero telephoned the Kalamazoo Police Department and informed a Detective Walker that Nero had arranged to purchase heroin from the defendant. Nero had been an informer for that department for some six months. Around 10 p.m., Detective Walker and a policewoman met Nero near the place of the arranged purchase. Walker, who had worked with Nero on previous occasions, performed a pat-down search of Nero's person and searched Nero's car by looking on the front and rear seats, under the seats and in the glove compartment. Walker gave Nero a $20 bill after re-

---

[1] MCLA 335.152; MSA 18.1122, repealed by 1971 PA 196.

cording the serial number. Nero then drove his car to the place where the purchase was to be made. Walker and the policewoman followed in their unmarked vehicle. They saw Nero disappear behind a house located at 216 W. Patterson Street. They saw him emerge from behind that house 10 minutes later, get back into his car, and drive to the original meeting place where he turned over to them two packets of what subsequently proved to be heroin.

Nero's testimony supplied the only evidence directly linking defendant with the sale. The fact of Nero's long history of heroin use, his criminal record, and his possible motives for fabrication were thoroughly explored by defense counsel. Defense counsel highlighted several contradictions in Nero's testimony. It was also revealed that there was a breaking and entering charge pending against Nero and that he was in jeopardy of probation revocation. By questioning a Kalamazoo County Sheriff's deputy, it was revealed that when Nero was arrested in late January 1971 on the breaking and entering charge, Nero proposed a deal whereby he would become an informer for the sheriff's department in return for dismissal of the charge. However, the deputy testified that no such agreement was made.

Defense counsel did not request any special jury instructions pertaining to Nero's credibility, and stated that he had no objections to the instructions that were given. The jury, having full knowledge of Nero's character, history, and possible expectations of reward, returned a verdict on August 12, 1971, of guilty as charged.

On November 29, 1971, the prosecutor petitioned for nolle prosequi of the breaking and entering charges pending against Nero, on the grounds that

he had returned the stolen property and had "rendered great assistance in the area of the narcotics traffic within Kalamazoo County" including testimony which had "resulted in pleas and convictions regarding narcotics violations". The petition for order of nolle prosequi was granted by the circuit court.

## I

The trend of Federal criminal trial practice is now to require a special cautionary instruction regarding the testimony of government witnesses who are narcotics addicts and who are paid informers or who have criminal charges against them.[2] In Michigan, there is no similar tradition of

---

[2] The first Federal case to require a special instruction in this context seems to have been *Fletcher v United States,* 81 US App DC 306; 158 F2d 321, 322 (1946), where, at an early stage of this nation's awakening to the problem of drug abuse, Judge Groner opined that it was a "well recognized fact that a drug addict is inherently a perjurer where his own interests are concerned". This language has even lead defendants to request that the court instruct the jury as a matter of law that addict-informers are inherently perjurers, but refusals to so request have been sustained on appeal. *Government of the Virgin Islands v Hendricks,* 476 F2d 776 (CA 3, 1973). *United States v Gregorio,* 497 F2d 1253 (CA 4, 1974). The general language of the instruction is to the effect that the testimony of an addict-informer who is either paid or under pressure must be examined with greater scrutiny than that of an ordinary witness. *United States v Masino,* 275 F2d 129 (CA 2, 1960). The precise terms of the instruction have been left to the trial court whose ultimate responsibility it is to formulate the charge. One version of an instruction on informers can be found in 1 Devitt and Blackmar, Federal Jury Practice and Instructions (2d ed), § 12.02. The Devitt and Blackmar instruction does not specify the unique danger said to be present in the testimony of addict-informers. Another more general instruction on interested witness testimony can be found in Mathes, *Jury Instructions and Forms for Federal Criminal Cases,* 27 FRD 39, 68 (1961).

The dangers inherent in such testimony are said to include the addict's fear of being jailed or deprived of access to drugs, and also the fear of retaliation from others in the drug trade. *United States v Kinnard,* 150 US App DC 386; 465 F2d 566, 571 (1972). It is unclear whether cocaine or methadone addiction is thought to present like dangers. *United States v Gregorio, supra.*

Failure or refusal to give the instruction is not per se reversible

judicial decision in the area of special instructions pertaining to the credibility of addict-informers. This may be due to the fact that state courts in general have retreated further than Federal courts from the common-law tradition of liberal judicial comment on the evidence in jury trials.[3]

Michigan statute[4] and court rule[5] condition the requirement of an instruction on a request therefor. This requirement is binding where, as here, defendant predicates no error on the instructions actually given, but rather contends that the trial court on its own motion should have instructed in an area where no tradition of state judicial decision exists. While this Court would not be adverse to a cautionary instruction where the uncorroborated testimony of an addict-informer is the only evidence linking the accused with the alleged offense, there must be a proper request. Focusing special attention or particular suspicion on a wit-

---

error. *See United States v Lee,* 165 US App DC 50; 506 F2d 111 (1974), *Orebo v United States,* 293 F2d 747 (CA 9, 1961), and *Joseph v United States,* 286 F2d 468 (CA 5, 1960), where the informers' testimony was substantially corroborated. Compare *United States v Griffin,* 382 F2d 823 (CA 6, 1967), where the trial court failed to give the unrequested cautionary instruction, and instructed erroneously on a presumption of truth attaching to a witness' testimony unless outweighed by evidence to the contrary.

[3] 9 Wigmore, Evidence (3d ed), § 2551.

[4] MCLA 768.29; MSA 28.1052, reads in part: "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

[5] GCR 1963, 516.1 and .2 read in part:

".1 Request for Instructions. At or before the close of the evidence, any party may, or at any time the court reasonably directs, the parties shall, file written requests that the court instruct the jury on the law as set forth in the request. * * * The court may make such comments on the evidence, the testimony, and the character of the witnesses as in its discretion the interests of justice require.

".2 Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

ness or class of witnesses can be a risky business. Both sides should be given the opportunity to develop the record with respect to the fairness of such a proposed instruction.

In *People v McCoy,* 392 Mich 231, 236–238; 220 NW2d 456 (1974), this Court dealt with a related area of jury instructions regarding the credibility of accomplices. A majority of this Court therein held prospectively that it would be reversible error "to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge".[6] This holding does not require reversal in the instant case, nor are we of the opinion that in the interests of justice it should be so extended. First, the *McCoy* rule under discussion was given prospective application for the reason that it went beyond long-established Michigan precedent to the effect that special instructions regarding credibility was a matter within the sound discretion of the trial court. Second, there was no imbalance in the instructions given in the instant case. In *McCoy,* error was found in the trial court's failure to balance care and caution language actually used in the instruction on alibi with similar language relating to the accomplice who testified against the defendant. Third, the jury in the case at bar was fully apprised of the criminal past, and possible motivation of witness Nero. It would not be an unfair assessment of the record herein to say that as much testimony was elicited on the issue of Nero's credibility as on that of defendant's guilt or

[6] 392 Mich 231 at 240. To implement this holding, the proposed Michigan Criminal Standard Jury Instructions now circulating for study and comment contain a cautionary instruction relating to accomplice testimony.

innocence. Defense strategy from the outset was to put witness Nero on trial. In the face of this clear strategy, we cannot assume that defense counsel lightly disregarded the possibility of requesting a cautionary instruction or that such an instruction would have been refused if requested. Under the circumstances, MCLA 768.29; MSA 28.1052, and GCR 1963, 516.1 and 516.2 are controlling.

## II

Defendant urges this Court to follow the Illinois rule[7] that the uncorroborated testimony of an addict-informer is insufficient as a matter of law to make a jury-submissible case, and that his motion to dismiss at the close of the people's proofs should have been granted. Most recently, this Court has stated that it "has steadfastly supported the right of the trier of fact, particularly the jury, to believe, or disbelieve, in whole or in part, any of the evidence presented".[8] We hold that the credibility of an addict-informer, like that of an accomplice,[9] is a jury question, and that the jury may convict on such testimony alone.

## III

Defendant has produced no facts of record, by way of a motion for new trial based on newly-discovered evidence or otherwise, indicating that an agreement for Nero's testimony existed at the time of trial. Instead, he asserts that it would be incredibly naive to believe that there was neither an actual nor incipient deal; that if there was no

---

[7] *People v Bazemore,* 25 Ill 2d 74; 182 NE2d 649 (1962).

[8] *People v Fuller,* 395 Mich 451; 236 NW2d 58 (1975).

[9] *People v Zesk,* 309 Mich 129, 132; 14 NW2d 808 (1944).

actual bargain at the time of trial, Nero and the prosecutor knew there would be one within a short period of time. The prosecutor maintains that there was no agreement at the time of defendant's trial, and that subsequent dismissal of the charge against Nero resulted from several factors, some of which had no relation to defendant's trial. Nero, says the prosecutor, returned the property stolen during the breaking and entering and, most importantly, "blew his cover" by testifying at this trial and others so as to be of no further use in undercover work.

It would be atypical if an addict-informer did not have an expectation of consideration for his cooperation in a given case. The well of informer cooperation would soon run dry if law enforcement consistently adhered to a policy of no consideration. Furthermore, we would not be so paternalistic as to believe that jurors are not well aware of these facts of life.

Where an accomplice or co-conspirator has been granted immunity or other leniency to secure his testimony, it is incumbent upon the prosecutor and the trial judge, if the fact comes to the court's attention, to disclose such fact to the jury upon request of defense counsel.[10] The same requirement of disclosure should also be applicable if reasonable expectations, as opposed to promises, of leniency or other rewards for testifying resulted from contact with the prosecutor. It has been held to be a denial of due process for a prosecutor not to correct the testimony of such a witness against the defendant, where the witness testifies that he has been promised no consideration for his testimony and the prosecutor knows this statement to be

---

[10] *People v Love,* 43 Mich App 608; 204 NW2d 714 (1972). *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972). *People v Evans,* 30 Mich App 361; 186 NW2d 365 (1971).

false.[11] In regard to this duty to disclose, the prosecutor's office has been treated as an entity, and the promise of one of its attorneys, even if unknown to the assistant prosecutor trying the case, has been attributed to the state.[12]

However, it is one thing to require disclosure of facts (immunity or leniency) which the jury should weigh in assessing a witness's credibility. It is quite another to require "disclosure" of future possibilities for the jury's speculation. Indeed, if a prosecutor were required to volunteer that, although there was no agreement, he intended to recommend some sort of consideration for a witness because the witness was testifying in this and other cases or had corrected his past misdeeds, could this not be viewed as vouching for that witness's credibility? The focus of required disclosure is not on factors which may motivate a prosecutor in dealing subsequently with a witness, but rather on facts which may motivate the witness in giving certain testimony. Of the latter, this jury was made well aware by means of the thorough and probing cross-examination by defense counsel.

Affirmed.

Kavanagh, C. J., and Williams and Coleman, JJ., concurred with Fitzgerald, J.

Levin, J. *(concurring)*. Clarence Atkins was convicted of the sale of heroin on the testimony of Edward Nero, a police informer, who said that he purchased the narcotic from Atkins on March 12, 1971.

At the time of the buy, Nero faced charges for a January 24, 1971 breaking and entering. Atkins

---

[11] *Napue v Illinois,* 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).

[12] *See Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972).

was convicted on August 12, 1971. On November 29, 1971, the court entered an order of nolle prosequi on the breaking and entering charge on the prosecutor's representations that the stolen property had been returned and Nero had "rendered great assistance in the area of narcotics traffic" including testimony which had "resulted in pleas and convictions regarding narcotics violations".

At Atkins' trial, Nero denied that he had been promised leniency.

Nero offered to become a police informer in the fall of 1970 after he was convicted and before sentencing for a theft offense; he was placed on probation for that offense.

The subsequently nol-prossed breaking and entering offense was apparently committed in violation of a condition of Nero's probation. Nero testified that he was using drugs at the time of the purchase from Atkins.

Nero's history of narcotic addiction was amply probed at the trial. He said that he renewed the use of narcotics in connection with his work as an informer as it was necessary to appear to be an addict to make buys from drug dealers. He was not using drugs at the time of trial.

The closing arguments were not transcribed. We, therefore, do not know how this case went to the jury.

The pendency of the breaking and entering charge was made known to the jury. Defense counsel declared: "With this kind of man, I think that there is the possibility, and I intend to argue this very strongly, that in his mind there might be a deal". Defense counsel may have argued without protest or contradiction by the prosecutor that despite the lack of a formal agreement Nero justi-

fiably expected that by testifying for the people he might obtain favorable treatment.

In the context of that statement of defense counsel and the failure to record the closing arguments,[1] I cannot predicate reversible error and concur in affirmance of defendant's conviction.

I

I agree with my colleagues that a prima facie case may be made on the uncorroborated testimony of a witness who has reason to fabricate his testimony and that no distinction in this regard can properly be drawn between interested witnesses generally and addict informers in particular.

We also agree that, absent a request for a cautionary instruction, a trial judge is not obliged to instruct the jury regarding the special scrutiny it should give informer testimony.

If such an instruction is requested, the judge should give it. An informer facing prosecution for an offense or whose use of drugs in violation of law and of a condition of probation is tolerated by the authorities has the same motive to fabricate as an accomplice. See *People v McCoy,* 392 Mich 231, 236; 220 NW2d 456 (1974).

I further agree that Atkins is not entitled to a

---

[1] We should take up where we left off in *People v Lee,* 391 Mich 618, 630–631; 218 NW2d 655 (1974):

"Waiver of recording of closing arguments is apparently not an uncommon practice in Michigan's trial courts, judging from a number of recent appeals which have raised the issue. If this failure to record the entire record constitutes unfairness, then the remedy lies in amendment of the statutory and court rule scheme, to make verbatim records of the *entire* proceedings at trial mandatory in all criminal trials. Without expressing an opinion on the matter we hereby announce our intention to consider whether such an amendment to the court rule would be in order."

new trial simply because the breaking and entering charge against Nero was dismissed.

Rewarding accomplices and informers with leniency or exculpation for their transgressions of the law in exchange for testimony and evidence to convict another person is an accepted prosecutorial practice.

Atkins did not move for a new trial or for an evidentiary hearing whereat he might seek to establish that there was an undisclosed arrangement with Nero. The dismissal of the breaking and entering charge and the failure to charge probation violation do not in and of themselves establish that such concessions were pursuant to an agreement.

Although the record does not support a conclusion that there was an agreement, the probability is that there was a tacit understanding.[2]

I question the usefulness of a distinction between the "disclosure of facts (immunity or leniency) which the jury should weigh in assessing a witness's credibility" and " 'disclosure' of future possibilities for the jury's speculation". Some future possibilities may, indeed, appear so extravagant as to be fanciful. Others will, however, have sufficient substantiality to induce "reasonable expectations, as opposed to promises, of leniency or other rewards" and may motivate fabricated testimony.

The United States Court of Appeals for the Sixth Circuit said:

---

[2] My colleague writes:

"It would be atypical if an addict-informer did not have an expectation of consideration for his cooperation in a given case. The well of informer cooperation would soon run dry if law enforcement consistently adhered to a policy of no consideration. Furthermore, we would not be so paternalistic as to believe that jurors are not well aware of these facts of life."

"Concededly promises of immunity are admissible; they are, however, rarely made. Inasmuch as the question involved is the motive for testifying falsely and therefore the state of mind of the prosecuting witnesses, *the relevant evidence is not alone the acts or attitude of the district attorney but anything else that would throw light upon the prosecuting witnesses' state of mind.* It is therefore entirely proper, either by cross-examination of the witness himself, or otherwise, to show *a belief or even only a hope on his part that he will secure immunity or a lighter sentence, or any other favorable treatment, in return for his testimony,* and that, too, even if it be fully conceded that he had not the slightest basis from any act or word of the district attorney for such a belief or hope. The fact that despite a plea of guilty long since entered, the witness had not yet been sentenced, is proper evidence tending to show the existence of such hope or belief." (Emphasis supplied.) *Farkas v United States,* 2 F2d 644, 647 (CA 6, 1924).[3]

II

The United States Supreme Court said:

"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the *credibility of the witness."* *Napue v Illinois,* 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). (Emphasis supplied.)

" * * * deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' * * * In *Napue v Illinois,* 360 US 264 (1959), we said, '[t]he same

[3] *Accord: Thurman v United States,* 316 F2d 205 (CA 9, 1963); *Whitton v State,* 479 P2d 302, 316 *et seq.* (Alas, 1970); *People v Pantages,* 212 Cal 237; 297 P 890, 897 (1931); *State v Kent,* 4 ND 577; 62 NW 631, 639 (1895).

*See also, Alford v United States,* 282 US 687, 693; 51 S Ct 218; 75 L Ed 624 (1931).

result obtains when the State, although not soliciting false evidence, allows it to go *uncorrected* when it appears.' *Id.*, at 269.

" \* \* \* evidence of any *understanding or agreement* as to a future prosecution would be relevant to [the witness's] credibility and the jury was entitled to know of it." (Emphasis supplied.) *Giglio v United States*, 405 US 150, 153, 155; 92 S Ct 763; 31 L Ed 2d 104 (1972).[4]

We all begin with the same premises. A prosecutor has an affirmative duty to disclose to the jury any promise of leniency. He has the same duty of disclosure regarding reasonable expectations, as opposed to promises, of leniency or other rewards for testifying.

We further agree that a prosecutor violates this duty if he fails to correct false evidence that a witness has not been promised consideration for his testimony.

A witness provides false evidence if his testimony gives a false impression. A prosecutor in a position to correct a false impression may not knowingly allow it to go uncorrected.

The prosecutor's affirmative duty to disclose facts which tend to affect credibility extends to tacit understandings as well as concrete agree-

---

[4] In *State v Carter*, 69 NJ 420; 354 A2d 627, 633 (1976), the trial judge denied a new trial finding that the representations made by a police officer "were not concrete promises" and, therefore the responses of the prosecution's witnesses "did not constitute clear perjurious testimony." The Supreme Court of New Jersey reversed, stating that "Regardless of whether the representations made to Bello \* \* \* can be characterized as promises for the purpose of proving perjury, it is clear that they could have motivated Bello to testify favorably for the state." The Court added that an officer's assurances that he would relay the witness's "cooperation with the state to the appropriate authorities obviously was intended to convey to [the witness] the notion that he could expect favorable treatment as to his own criminal involvements. Therefore, when [the witness] testified that no promises had been made to him except that of protection, the trial prosecutor having knowledge of [the officer's] assurances to [the witness], had an obligation to disclose this information to the court and to defense counsel."

ments. His obligation not to allow false evidence to go uncorrected requires that he supplement the record if he is aware that a witness has told a partial truth that may mislead the jury.

All lawyers have a duty to the court to correct testimony they know to be false. Disciplinary Rule 7.102(A) provides that in his representation of a client a lawyer shall not:

"(3) *Conceal* or knowingly fail to disclose *that which he is required by law to reveal.*
"(4) *Knowingly use* perjured testimony or *false evidence.*" (Emphasis supplied.)

Disciplinary Rule 7.102(B) obliges a lawyer who receives information clearly establishing that his client has "perpetrated a fraud upon a person or tribunal" to call upon his client to rectify the same and, if he refuses, to "reveal the fraud to the affected person or tribunal".

A prosecutor has a special duty to disclose all the evidence whether it tends to support or contravene the prosecution:

"The only legitimate object of the prosecution is, 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence.' The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community." *Hurd v People,* 25 Mich 405, 416 (1872).

A statement by an accomplice-informer witness

that no promise has been made to him is misleading although no positive promise has been made if he has a reasonable expectation of leniency or other reward. The statement is not wholly true as it conceals the witness's expectations, expectations fostered by the practice of granting concessions to accomplice-informer witnesses. The apparent purpose of knowing concealment and a failure to correct the record is to mislead the jury.

Michigan civil jurisprudence fully supports the " 'silence-fraud' rule". *Williams v Benson,* 3 Mich App 9; 141 NW2d 650 (1966).

In an early case, *Kenyon v Woodruff,* 33 Mich 310, 314 (1876), this Court approved instructions allowing recovery for fraudulent representation "in stating what was particularly and directly untrue and also in *stating but part of the truth* in respect to other matters". (Emphasis supplied.)

In *Sullivan v Ulrich,* 326 Mich 218, 229; 40 NW2d 126 (1949), this Court held that a seller had made a misrepresentation to a purchaser where, although the answers were truthful, the tendency was to convey a "false impression".[5]

"Failure to disclose a material fact necessary to prevent a false impression is as much a fraud as positive misrepresentation. It is not essential that the pretenses by which a fraud is accomplished be expressed in words." *Michigan National Bank v Marston,* 29 Mich App 99, 104; 185 NW2d 47 (1970).

"In Michigan, even without a fiduciary relationship, a

---

[5] Where the responses to inquiries "were in such form as *naturally tended to reassure* plaintiffs and to cause them to proceed on the assumption" that the facts were different than they actually were, "the concealment of the true facts and the *deliberate creating of false impressions* and inferences is the equivalent of an express and intentional misrepresentation." (Emphasis supplied.) *Groening v Opsata,* 323 Mich 73, 82; 34 NW2d 560 (1948).

*Similarly see Wolfe v A E Kusterer & Co,* 269 Mich 424, 430; 257 NW 729 (1934).

party is under a duty to use diligence in making a complete disclosure of facts where partial disclosure may convey false impressions and mislead the plaintiff. Such half-truths or non-disclosures are considered to be concealment of facts and, therefore, misrepresentations. *Groening v Opsata,* 323 Mich 73; 34 NW2d 560 (1948). See also *Equitable Life Insurance Co of Iowa v Halsey, Stuart & Co,* 312 US 410, 425–426; 61 S Ct 623; 85 L Ed 920 (1941); 1 Harper & James, The Law of Torts, pp 586–588 (1956)." *Strand v Librascope, Inc,* 197 F Supp 743, 753 (ED Mich, 1961).[6]

## III

If there is an agreement with a prosecution witness, it must be disclosed to the jury.

If there is no agreement and charges of law violation have been or could be lodged against the witness or sentencing has been deferred, and in similar cases the prosecutor has refrained from prosecuting or has granted or sought charge reduction or leniency in sentencing for witnesses who

---

[6] "A partial truth, as well as a truth taken out of context and used as bait to defraud and deceive, is an actionable false representation." *Nationwide Motorist Association of Michigan, Inc v Nationwide Motorist Association, Inc,* 273 F Supp 875, 882 (WD Mich, 1967).

*Similarly, see United States Fibres, Inc v Proctor & Schwartz, Inc,* 358 F Supp 449, 480–481 (ED Mich, 1972).

The Restatements of Torts and Contracts state the relevant principle:

"(2) One party to a business transaction is under a duty to disclose to the other before the transaction is consummated

"(a) such matters as the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

"(b) such additional matters as he knows or believes to be necessary to prevent his partial statement of the facts from being misleading; * * * ." Restatement Torts, 2d (Tentative Draft No 11), § 551, p 42.

*"Half-truths.* A statement may be true with respect to the facts stated, but may fail to include qualifying matter necessary to prevent the implication of an assertion that is false with respect to other facts. For example, a true statement that an event has recently occurred may carry the false implication that the situation has not changed since its occurrence. Such a half-truth may be as misleading as an assertion that is wholly false." Restatement Contracts, 2d (Tentative Draft No 11), § 301, comment b, p 7.

assisted the prosecution, those facts and their significance should be fully disclosed and explained to the jury.

Absent a statement by the prosecutor in the jury's presence acknowledging that accomplice-informer witnesses may obtain leniency or other concessions and, while there is no formal agreement with the witness in the instant case, he may justifiably expect some leniency, a denial that there is an agreement for leniency is likely to create a false impression that may mislead the jury.

The assumption that juries know that an accomplice-informer witness is telling a partial truth when he denies there is an agreement for leniency is controverted by prosecutorial efforts to confine the scope of the inquiry to actual promises.[7] In all events, a judge should not knowingly allow a partial truth to go uncorrected.

The practice of granting leniency to accomplice-informer witnesses is well known to judges, trial and appellate. Judges frequently allow charge reduction and grant sentencing leniency to such witnesses to assist law enforcement. In this case, the judge granted a nolle prosequi on the prosecutor's representation that Nero had assisted in obtaining convictions.

A judge, aware of such practices, aware of the expectations of accomplice-informer witnesses and that they are in a measure justified by what in fact occurs, should, without a request by defense counsel, require a statement by the prosecutor of the practice or either take judicial notice, as in my

---

[7] *See People v Mata,* 68 Mich App 337; 242 NW2d 574 (1976); *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972); *People v Dupuie,* 52 Mich App 510; 217 NW2d 902 (1974); *People v Taylor,* 46 Mich App 259; 207 NW2d 899 (1973). *Cf. People v Crutchfield,* 62 Mich App 149; 233 NW2d 507 (1975); *People v Spruell,* 61 Mich App 632, 233 NW2d 118 (1975).

colleague's opinion, of, or permit the defendant to prove, the practice.[8]

We are at approximately the same juncture regarding concessions to accomplice-informers as we were until recently in regard to disclosure of plea-bargaining concessions. A short time ago it was bad form for a defendant to acknowledge, in response to the judge's question, "have any promises been made to you?", that there was a plea bargain. The judge might even refuse to accept a plea of guilty if the defendant responded, truthfully, that there had been plea bargaining; in order to obtain the plea bargain defendants were expected to deny it.

The practice of granting leniency to accomplice-informer witnesses should be spread fully on the record.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

---

[8] It should not be necessary to divert the trial from the principal issue of guilt or innocence to provide the defendant with an opportunity to prove what those knowledgeable of the criminal justice system are all aware.