PEOPLE v STANDIFER

Docket No. 74633. Argued November 13, 1985 (Calendar No. 13). Decided August 5, 1986.

Jesse D. Standifer was convicted by a jury in the Monroe Circuit Court, James J. Kelley, J., of first-degree criminal sexual conduct. The defendant and Charles Burchette each had been charged with forcing the victim to engage in sexual acts on two separate occasions while in the county jail. Burchette had agreed to testify against the defendant in exchange for being allowed to plead guilty to a lesser charge arising out of the later incident and charges to be dropped in the other. Twice during the defendant's trial for the first incident, the prosecution, in questioning Burchette, raised the fact of his guilty plea of the second incident, first, as prelude to anticipated inculpatory testimony, and, second, for the purpose of impeachment following recantation. The Court of Appeals, HOOD, P.J., and V. J. BRENNAN and DEEGAN, JJ., reversed in an unpublished opinion per curiam, citing error in allowing introduction of evidence of Burchette's plea of guilty of the same crime as that with which the defendant was charged (Docket No. 67315). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice WILLIAMS and Justice BRICKLEY, the Supreme Court *held*:

The first reference by the prosecution to the witness' plea, if error as impeachment of the prosecution's own witness, does not require reversal. No objection was raised, and no manifest injustice was shown. The second reference to the plea was permissible as impeachment of a recanting witness.

1. At common law, parties could not impeach their own witnesses on the grounds that the party calling a witness vouches for the witness' credibility and that allowing impeachment of one's own witness allows too much coercive power to

REFERENCES

Am Jur 2d, Witnesses §§ 551, 554, 559, 560.

Use of plea bargain or grant of immunity as improper vouching for credibility of witness in federal case. 76 ALR Fed 409.

Propriety, and prejudicial effect of comments by counsel vouching for credibility of witnesses. 45 ALR4th 13.

the calling party. However, the rule is being abandoned. The Rules of Evidence, which retain a modified version of the common-law rule, provide that the credibility of a witness may be attacked by the calling party where the calling party is the prosecutor and is obliged to call the witness; where, in a civil case, the witness is an opposite party or its employee or agent; or where the witness' testimony is contrary to that anticipated by the calling party and is actually injurious to its case. In this case, the trial court correctly concluded that the witness' testimony was unexpected by and injurious to the prosecution.

2. At the request of defense counsel, the prosecutor or the judge must disclose any actual or reasonably expected immunity offered to obtain the testimony of an accomplice or a coconspirator. A prosecutor may not offer evidence of the conviction by trial of an accomplice-witness as substantive evidence of another person's guilt. The bar does not extend to consideration provided in exchange for a plea of guilty where relevant to a witness' credibility.

3. In this case, there was no error in the prosecution's impeachment of a recanting witness by inquiring into the consideration given him for his truthful testimony. The prosecution twice referred to the guilty plea of its witness. The first reference, even if error as impeachment by the prosecution of its own witness, does not require reversal. No objection was raised by the defense, and no manifest injustice was shown. The second reference was permissible as impeachment of a recanting witness whose testimony was unexpected and actually injurious to its case. Defense counsel had the knowledge, opportunity, and ability to clarify any ambiguity concerning the guilty plea. That he did not do so was a tactical decision.

Justice RILEY, concurring, stated that the judgment of the Court of Appeals should be reversed and the defendant's conviction reinstated because there was no manifest injustice occasioned by the admission of the evidence in question.

Reversed.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that testimony that the witness had pled guilty of third-degree criminal sexual conduct, which had occurred after the acts with which the defendant was charged, and that the witness was granted consideration in exchange for his testimony was incomplete and misleading. The omission of the fact that the witness' plea of guilty was of an offense other than the one with which the defendant was charged, left the inaccurate impression that the witness had pled guilty of the same offense, contrary to the witness' testimony.

A prosecutor must disclose any consideration offered to or

received by an accomplice-witness. However, such a disclosure can be made without adverting to whether the witness was charged with or convicted of a crime. The conviction of a person involved in the same criminal enterprise with which a defendant is charged is not admissible at the defendant's separate trial as substantive evidence of the defendant's guilt.

The rule requiring a prosecutor to disclose consideration given a witness for testimony at trial should not be used against a defendant by permitting admission of evidence that but for the consideration offered would not be admissible. The important disclosure is that the witness received a benefit and the extent of the benefit, i.e., a reduced charge or sentence, not the nature of the offenses originally charged or reduced.

Justice ARCHER took no part in the decision of this case.

OPINION BY BOYLE, J.

1. CRIMINAL LAW — WITNESSES — IMPEACHMENT.

The credibility of a witness may be attacked by the calling party where the calling party is the prosecutor and is obliged to call the witness; where, in a civil case, the witness is an opposite party or its employee or agent; or where the witness' testimony is contrary to that anticipated by the calling party and is actually injurious to its case (MRE 607).

2. CRIMINAL LAW — WITNESSES — PLEA BARGAINS.

At the request of defense counsel, the prosecutor or the judge must disclose any actual or reasonably expected immunity offered to obtain the testimony of an accomplice or a coconspirator; a prosecutor may not offer evidence of the conviction by trial of an accomplice-witness as substantive evidence of another person's guilt; however, the bar does not extend to consideration provided in exchange for a plea of guilty where relevant to a witness' credibility.

DISSENTING OPINION BY LEVIN, J.

3. CRIMINAL LAW — WITNESSES — PLEA BARGAINS.

The requirement that a prosecutor must disclose consideration given a witness for testimony at trial should not be used against a defendant by permitting admission of evidence that but for the consideration offered would not be admissible; the important disclosure is that the witness received a benefit and the extent of the benefit, i.e., a reduced charge or sentence, not the nature of the offenses originally charged or reduced.

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, *William F. Lavoy,* Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*Czeryba, Dulany & Godfroy* (by *William P. Godfroy*) for the defendant.

BOYLE, J. We reverse the decision of the Court of Appeals and affirm the defendant's conviction. There was no error in the prosecutor's impeachment of a recanting witness by inquiring into the consideration given him for his truthful testimony. Neither *People v Lytal,* 415 Mich 603; 329 NW2d 738 (1982), nor *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), is applicable on these facts. Further, if error existed in the prosecution's questioning concerning Mr. Burchette's guilty plea, no manifest injustice mandates reversal of Mr. Standifer's conviction. Defense counsel had the knowledge, the opportunity, and the ability to clarify any ambiguity concerning Mr. Burchette's guilty plea. Since the witness testified to his own and Standifer's innocence, there was no possible "guilt by association" by virtue of his testimony.

I

FACTS

Jesse Standifer, the defendant in this case, and Charles Burchette were both charged with forcing Thomas Hart to engage in sexual acts on two different dates during their mutual imprisonment at the Monroe County jail. Mr. Burchette pled guilty to a reduced charge in the incident alleged to have occurred on November 8, 1981, and agreed to testify against Mr. Standifer in trials for both the October 25, 1981, and the November 8, 1981,

incidents.[1] In exchange, the charges against Burchette for the October 25, 1981, incident were to be dropped.

During direct examination of Mr. Burchette at Mr. Standifer's trial for the alleged October 25, 1981, sexual assault, the first reference to Mr. Burchette's guilty plea occurred:

*Q.* Okay. Now, Mr. Burchette, you know what the charges are that we're here for today, don't you?

*A.* Yes.

*Q.* In fact you were also charged with criminal sexual conduct; is that correct?

*A.* Yes.

*Q.* And that was—you were charged with criminal sexual conduct involving Thomas Hart; is that right?

---

[1] The actual plea bargain to which Mr. Burchette agreed for the November 8, 1981, incident follows:

*Mr. Lockwood:* The entire plea bargain, your Honor, is that the Defendant Charles Burchette will plead guilty to Count II of the amended information in case 19131 [November 8, 1981 incident], that being criminal sexual conduct in the third degree—it carries a maximum of fifteen years. The People will dismiss Count I, the original count of criminal sexual conduct in that case. The People also will dismiss a charge of criminal sexual conduct in the first degree in case 19139 [October 25, 1981 incident] which is before this court scheduled for trial on May the 5th, I believe. Further, the Defendant will plead guilty to breaking and entering an unoccupied dwelling in case 18984 presently pending before Judge Sullivan.

\* \* \*

*Mr. Lockwood:* The Defendant Charles Burchette has also agreed to give truthful testimony in People versus Jesse Standifer, case 19132 [November 8, 1981 incident] and case 19140 [October 25, 1981 incident], which are companion cases to the two criminal sexual conduct cases in front of your Honor. The People have further agreed in each of these cases to—in their recommendation in sentencing—to recommend a minimum of three years—a minimum of no more than three years. I believe the police have agreed to recommend a minimum in these cases of no more than five years.

*A.* Yes.

*Q.* And I wonder if you can, in your own words, Mr. Burchette, explain the outcome of that charge as it applies to you.

*A.* What went on?

*Q.* Yeah. Well, you pled guilty, right?

*A.* Yes.

*Q.* And you were given a plea bargain; is that correct?

*A.* Yes.

*Q.* Could you just explain what that was so the jury knows.

*A.* Like what went on over here?

*Q.* Well, what was the bargain that was given to you? Do you understand what it was?

*A.* I had a three and a half to fifteen—third degree, and a three to ten on a B&E.

*Q.* Okay. And did you also agree to testify in this case?

*A.* Yes.

Defense counsel made no objection to the exchange. Contrary to his earlier statement to the police, Burchette proceeded to testify favorably to Standifer. Burchette said that after having oral sex performed on himself by the complainant in the shower, he saw Standifer go into the shower and remain a couple of minutes with the complainant. According to Burchette, the complainant voluntarily performed oral sex with Burchette, and Burchette knew nothing about whether Standifer had sex, forcible or consensual, with the complainant. When the prosecution sought to place Burchette's prior statement to the police and his guilty plea in evidence as prior inconsistent statements, defense counsel objected to such impeachment of Mr. Burchette on the basis that the prosecution was impeaching its own witness. The trial court ruled that the impeachment was permissible under MRE 607(2)(C) because Mr. Bur-

chette's testimony was unexpected by and injurious to the prosecution's case. Defense counsel then made a general objection to "the whole line of proceedings here" and moved for a mistrial, which was denied. The second reference to Burchette's guilty plea then occurred. Confronted with his prior statement to the police, Burchette agreed that he had previously said that he forced Hart to engage in sex with himself and with Standifer. His trial testimony, however, was that he didn't know whether Hart performed fellatio on Standifer, and he denied using force or coercion to force Hart to perform fellatio on either Standifer or himself, his guilty plea and prior statement notwithstanding.

During closing arguments, counsel focused upon Burchette's credibility, or lack thereof. The prosecution argued that the jury should not believe Burchette's testimony exculpating Standifer because Burchette had lied about his own sexual activities with the complainant—Burchette denied using force, contrary to his prior statement to the police.[2] The defense argued that none of the prosecution's inmate-witnesses were particularly truthful, but that when a prosecution witness like Burchette testified favorably to the defense, that is

[2] In reviewing the testimony for and against Mr. Standifer, the prosecutor urged the jury to believe the witnesses testifying against the defendant and to disregard Burchette's testimony:

The only testimony that we have [favoring Mr. Standifer] are [sic] Mr. Burchette's, which I would ask you to totally disregard —you saw him on the stand. A person who has pled guilty to forcing Mr. Hart to give him a head job, he comes before you and says it never happened, I never forced him. And Mr. Standifer basically says—he comes before you, I didn't do it. That's all. Not that Mr. Hart had a grudge against him, or whatever happened. He says Mr. Hart didn't have any money— we know that he did—and that he approached me for sexual favors to get money. I don't think that story is believable at all.
I'd ask you to believe Mr. Hart, Mr. England, and I ask you to find the defendant guilty . . . .

well worth noting.[3] On rebuttal, the prosecution argued more strongly that Burchette should not be believed:

> [F]or some reason all of a sudden we're suppose [sic] to believe Burchette who was given a plea bargain to come in here and testify, and changed his story, which is pretty obvious.
>
> I'm going to ask you something. Consider this when you're considering things in there. Would the prosecuting attorney give a guy a plea bargain, drop a charge against him, et cetera, in exchange for his testimony if this was the kind of testimony he had promised to give? Now Burchette is the kind of guy who goes out and he'll get whatever he can—obviously we got burned.

---

[3] Defense counsel argued:

The Prosecutor says to you: We called Charlie Burchette. He was going to be our star witness. He pled to one of the offenses of criminal sexual conduct in the third degree on November 8th. He gets up on the stand, but he doesn't say that Standifer forced him to pick on Tom Hart. In fact, what the prosecution attempts to do when they don't like what Burchette testifies to is do what's known as impeach their own witness. By impeaching their own witness, whom they called, they grab a statement and they have him read through the statement. Burchette said to you, look, when I gave that statement, I'm 18, I didn't have a lawyer, I wanted a lawyer, the cops wouldn't give me a lawyer, I said it, whatever had to be said, and said it that way, but that was not the truth what I said, what I'm telling you in court is the truth.

He says that Standifer didn't put him up to anything, that he had sex with Charlie—with Thomas Hart on a number of occasions, that Hart propositioned him—I think he referred to him as a homosexual, that under no circumstances did Standifer use or threaten force or coercion on Hart.

The prosecution says to you, well, we had to call these other guys but don't you believe the other guys we called. They called Anthony Willert. Willert didn't observe anything. They called Carl Trouten. Trouten did not observe any so-called sex acts. They also called I think a Kenneth Lorton, and Lorton himself didn't observe any so-called sex acts. Maybe they didn't observe any so-called sex acts because—whether you think it's disgusting or not—the defendant and Hart went back into the shower while the other guys were watching TV and a sex act was performed.

## II

### LEGAL BACKGROUND

The rule of evidence which forms the legal backdrop for the instant case is the common-law rule that parties cannot impeach their own witnesses. See generally McCormick, Evidence (3d ed), § 38, pp 82-85. The rule is based upon two grounds: that the party calling the witness vouches for the credibility of each witness called, and that allowing impeachment of one's own witness allows too much coercive power to the calling party. *Id.*, p 84. The rule is being abandoned. *Id.*, p 82. See, e.g., FRE 607: "The credibility of a witness may be attacked by any party, including the party calling him." Michigan, however, retains a modified version of the rule. MRE 607 provides:

> The credibility of a witness may be attacked by
> (1) an opposing party; or
> (2) the calling party if
> (A) the calling party is the prosecutor and he is obliged to call the witness,
> (B) in a civil case, the witness is an opposite party or an employee or agent of an opposite party, or
> (C) the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case.

Since the prosecution is not obliged to call an accomplice, when it does so, the prosecution is said to vouch for the witness' testimony, and the witness cannot generally be impeached. In *People v White*, 401 Mich 482; 257 NW2d 912 (1977), this rule was applied to find error where a witness had been called by the prosecution with prior knowledge that the witness might recant. The Court

found that in such circumstance both surprise and hostility were required before the witness could be impeached. In the instant case, there was no defense objection to the initial prosecutorial questioning concerning Burchette's plea bargain. When defendant's counsel objected to the plaintiff's questioning of Burchette after Burchette testified favorably to the defendant, the trial court correctly concluded that Burchette's testimony was both unexpected and injurious.

In *People v Atkins, supra,* this Court held that the prosecution or the judge must disclose, on request of defense counsel, any actual or reasonably expected immunity used to obtain the testimony of an accomplice or a coconspirator. This requirement is based upon the need of the jury to know the facts relevant to the credibility of a witness. *Atkins* stands for the proposition that a prosecutor is obliged to disclose agreements made in exchange for a witness' testimony.

In *People v Lytal, supra,* p 612, this Court cursorily adopted in three short paragraphs a rule, new/to the jurisprudence of this state, that "the conviction of another person involved in the criminal enterprise is not admissible at defendant's separate trial." This rule was described as "an established rule of law," *id.,* with citation to Justice LEVIN's minority opinion in *People v Crawl,* 401 Mich 1; 257 NW2d 86 (1977).[4] The portion of

---

[4] In *People v Crawl, no* Michigan case was cited for the proposition that "[a]s a long-established rule of the common law, an accomplice's plea of guilty . . . is not admissible against another person." *Id.,* p 33, n 24. One Michigan Court of Appeals case was cited for the proposition that a "conviction following a trial is not admissible against another person." *Id.* The Michigan case cited, *People v Eldridge,* 17 Mich App 306, 312-313; 169 NW2d 497 (1969), found that reversal was required due to the overwhelming prejudice created *in that case* by impeachment testimony. It is certainly an established rule that conviction of an accomplice is not substantive evidence of a defendant's guilt, but it is certainly not an established rule that considera-

*Lytal* with which we are today concerned held that
it was error for the trial court to allow the prose-
cution to elicit the prior convictions after trial of
two accomplice-witnesses to the same crime as
that charged against Lytal. Since no plea bargain
was negotiated with the two accomplices, there
was no consideration to be revealed to the jury
under *People v Atkins, supra. Lytal, supra,* p 612.
*Lytal* apparently stands for the proposition that
where no consideration is offered the prosecution
may not offer evidence of the *conviction by trial* of
an accomplice-witness, although the Court in dicta
added that where consideration had been offered,
that could be shown without revealing the fact of
conviction. *Id.* Barring evidence of consideration
provided in exchange for a plea is not the rule of
the case, and has not been endorsed by any other
authority from this Court. Nonetheless, in the
instant case, the Court of Appeals construed *Lytal*
as standing for the proposition that the "convic-
tion of an accomplice-witness involved in the same
crime as that which defendant is being tried for is
not admissible." The Court below did not make the
essential distinction between a conviction by trial
and a conviction by plea where a bargain is in-
volved. Cf. *People v Buschard (On Remand),* 129
Mich App 160, 163-164; 341 NW2d 260 (1983)
(*Lytal* not applicable to a plea agreement involving
consideration). The Court of Appeals in the instant
case did observe that, while it believed the agree-
ment should be admissible for impeachment pur-
poses, it felt bound by the majority opinion in
*People v White, supra.*[5]

tion received in exchange for testimony is barred when offered for
impeachment purposes.

[5] Contrary to Justice LEVIN's opinion, the Court of Appeals in this
case did *not* state that "[i]t was apparent to the Court of Appeals . . .
that the prosecutor sought . . . . to create the impression that Bur-

III

ANALYSIS

Justice Levin's basis for affirming the Court of Appeals reversal of the trial court in the instant case is unclear. Justice Levin writes that "[t]he prosecutor did not bring out the fact that Burchette's plea of guilty was for an act of criminal sexual conduct that occurred about two weeks after the act for which Standifer was standing trial." Justice Levin further complains that the disclosure made by the prosecution was "incomplete and misleading." Justice Levin also says that the prosecutor did not "bring out that Burchette pled guilty at the same time to breaking and entering an unoccupied dwelling and was sentenced to serve three to ten years." Justice Levin concludes that the prosecution "thus was able to paint a picture of Standifer's guilt by association with Burchette," presumably in violation of *Lytal.*

Any omission by the prosecutor concerning the date of the offense to which Burchette pled guilty was simply unimportant. Mr. Standifer's counsel was quite attuned to the circumstances of Mr. Burchette's plea, and simply chose as a matter of trial tactics not to dwell upon Burchette's guilty plea on cross-examination.

Mr. Garrett, the defense counsel below, was aware from the first that two different incidents were charged against both his client and Mr. Burchette. At a February 19, 1982, pretrial conference held for all the defendants involved in both incidents, Mr. Garrett moved to consolidate the October 25, 1981, and November 8, 1981, charges against Mr. Standifer and to separate Mr. Standi-

chette had pled guilty to forcing Hart to commit a sexual act with Standifer, contrary to Burchette's testimony at the trial . . . ."

fer's trial(s) from Mr. Burchette's. Furthermore,
Mr. Garrett was familiar with and in possession of
a copy of Mr. Burchette's plea transcript for the
November 8 incident. Indeed, at the trial in the
instant case, it was Mr. Garrett who provided the
copy of Burchette's bargain which the trial judge
read into the *Standifer* record.

Thus, the only remaining basis for Justice LEV-
IN's opinion is that the bare fact that Burchette
pled guilty to a similar offense requires reversal,
presumably under this Court's opinion in *Lytal.*
*Lytal* is not, however, clearly applicable to this
case. As Justice LEVIN concedes, a plea bargain
was reached with Burchette. It provided that in
exchange for his testimony, the prosecution would
dismiss the CSC I charge in the October 25 case,
accept a plea to CSC II in relation to the November
8 incident, and recommend a three- to fifteen-year
sentence. *Lytal* does not in terms apply to this
situation because a determinative factor in *Lytal*
was the complete absence of any bargain.[6]

Justice LEVIN also appears sub silentio to limit
*Atkins* to promises of consideration given to an
accomplice who testifies favorably to the prosecu-
tion. This is contrary to the rationale of *Atkins*—
the need for the jury to know facts relevant to the
credibility of a witness. The effect of this reasoning
would be that the jury would be permitted to know
those facts where the accomplice testifies favorably
to the people, but would be deprived of the same
facts where an accomplice unexpectedly recants
and gives testimony which exculpates the defen-
dant.

Justice LEVIN's opinion would have the effect of

---

[6] In his opinion, Justice LEVIN alleges for the first time that
Burchette was *not* an accomplice. It is unclear why *Lytal* is even cited
as a basis for reversal in the instant case if Burchette was not an
accomplice.

creating a rule of reversal per se whenever a
conviction of an accomplice, by trial or by plea, is
used by the prosecution to impeach that accom-
plice's testimony in the separate trial of another
defendant. Such a per se rule would keep facts
relevant to an essential jury function—assessment
of the credibility of witnesses—away from the jury
without any sound policy reason or solid Michigan
decisional base. MRE 607, while narrower than
FRE 607, was found by the trial court to allow the
impeachment challenged in this case. While MRE
403[7] and MRE 609(a)[8] recognize that prejudicial
effect may require exclusion of otherwise relevant
evidence in a given case, there was no objection in
this case on the grounds of prejudice. Hence, the
trial court had no opportunity to balance the

---

[7] MRE 403 provides:

Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, waste of time, or needless pre-
sentation of cumulative evidence.

[8] MRE 609(a) provides:

For the purpose of attacking the credibility of a witness,
evidence that he has been convicted of a crime shall be admit-
ted if elicited from him or established by public record during
cross-examination but only if
  1) the crime was punishable by death or imprisonment in
excess of one year under the law under which he was convicted,
or the crime involved theft, dishonesty or false statement,
regardless of the punishment, and
  2) the court determines that the probative value of admitting
this evidence on the issue of credibility outweighs its prejudi-
cial effect and articulates on the record the factors considered
in making the determination.

While MRE 609(a), by its terms, applies to cross-examination rather
than direct examination, the policy behind the rule may be relevant
in a situation where a party impeaches its own witness on direct.
However, since there was no proper objection in the instant case,
there is no need to determine the degree to which the MRE 609(a)
requirements would apply to impeachment on direct examination.

probative value of Mr. Burchette's plea against the prejudice, if any, to Mr. Standifer.

IV

#### NO MANIFEST INJUSTICE

Generally, to preserve an allegedly erroneous admission of evidence for appellate review, timely objection must be made which states the specific ground of objection. MRE 103(a)(1). The standard of review for unobjected-to error is "whether manifest injustice has occurred." *People v Kelly,* 423 Mich 261, 277, 281; 378 NW2d 365 (1985). The proper standard in this case is whether manifest injustice has occurred rather than Justice LEVIN's rule of automatic reversal. Under that standard, Mr. Standifer's conviction is affirmed.

At the time of this trial, the first discussion of Mr. Burchette's plea was error because MRE 607 precluded impeaching one's own witness. However, there was no objection and no finding even of prejudice to the defendant, much less of manifest injustice. The mere mention of Burchette's plea, in these circumstances, could not constitute error requiring reversal. Defense counsel certainly did not think so. Unless counsel's failure to object constituted lack of effective assistance of counsel, the first discussion of Burchette's plea should provide no basis for reversal.

Neither should the second discussion of Burchette's guilty plea furnish the basis for reversal. Once Burchette testified in Standifer's favor, impeachment of his testimony became relevant to the prosecution rather than the defense. Under MRE 607, the impeachment was permissible because Burchette's testimony was unexpected and actually injurious. There was no objection based upon

possible prejudice to Mr. Standifer, and there was no finding by the trial court of such prejudice as would outweigh the probative value vis-à-vis Burchette's credibility. The inconsistent stories told by Burchette on the stand, in his plea, and in his statement to the police certainly would cast grave doubt upon any witness' truthfulness.[9]

Even if the Court had determined to limit *Atkins* or to expand *Lytal,* the instant case does not present any manifest injustice. This is not a case in which the prosecutor placed a witness he knew would recant on the stand for the purpose of revealing the conviction and engendering prejudicial effect on the issue of the defendant's guilt or innocence. This is not a case in which the prosecution buttressed the truthfulness of the testimony of a coöperating accomplice. This is a case in which the initial inquiry into the plea was so innocuous as to call for no objection at all by defense counsel. In the inquiry which drew an objection, the prosecutor was seeking to impeach a recanting witness. That critical factual distinction is illustrated by the trial conduct of defense counsel. Any omission by defense counsel of a full explanation of the plea bargain was a deliberate election not to pursue any omitted facts with the jury.

The record clearly establishes that Mr. Garrett was not surprised or misled concerning the date of the offense to which Burchette pled guilty. Mr. Garrett could, on cross-examination of Burchette, have cleared up any ambiguity concerning the

---

[9] Justice LEVIN misconstrues the prosecutor's argument to the jury when he says it was used to "reinforce the implication of guilt by association." The argument quoted by Justice LEVIN was used by the prosecutor to argue that Burchette had lied in the past and should therefore not be believed. This was a perfectly legitimate and relevant argument once Burchette unexpectedly testified favorably to the defense.

incident to which Burchette had pled guilty.[10] That he not only did not do so, but also objected to the prosecutor's inquiry, was quite obviously because it was in his client's interest to prevent Burchette's exculpatory testimony from being impeached. Having received the benefit of Burchette's testimony that he did not see the defendant engage in a sexual act, defense counsel made a wise tactical decision not to pursue the issue further by reminding the jury of Burchette's plea.

The result of Justice LEVIN's reasoning would be that where, as here, the defense has little interest in fully exploring the issue, information is kept from the jury regardless of whether the prejudicial effect, if any, is outweighed by the probative value of the conviction on the witness' credibility. The jury's ability to evaluate credibility would be needlessly hindered by a rule of exclusion which amounts to little more than gamesmanship.[11]

The Court of Appeals read *Lytal* to preclude the revelation of Mr. Burchette's conviction. We con-

---

[10] Indeed, during closing argument defense counsel told the jury, "[A]nd also they brought in Charles Burchette who pled guilty to apparently an offense on November 8th, and yet we're dealing with October 25th."

[11] As noted in the partial concurrence and partial dissent in *White, supra:*

At retrial, unless the defense calls Hodges as a witness, thereby opening him up for impeachment, the jurors will never hear unquestionably relevant evidence that is at least as credible as Hodges' subsequent testimony exculpating the defendant. . . .

The jurors should hear both sides of the story before making a decision on the defendant's guilt or innocence. They should hear Hodges' prior inculpatory testimony, his present exculpatory testimony and any explanation he may have for the change. Then, presented with the whole picture, the jurors can intelligently decide who they will believe.

[Then] [p]roposed Michigan Rule of Evidence 607 permits a party to impeach his or her own witness. This case demonstrates the necessity for such a rule. [*Id.,* pp 514-515 (WILLIAMS and COLEMAN, JJ., concurring in part, dissenting in part).]

clude that neither *Lytal* nor *Atkins* precludes the showing of consideration to, and conviction of, an "accomplice" witness where a favorable plea bargain creates the possibility of witness bias or otherwise is relevant to a witness' credibility. If a prosecution witness testifies against a defendant, *Atkins* provides that the defense can compel disclosure of a bargain. Where a prosecution witness presents unexpected testimony favorable to the defense, as occurred in the second discussion of Burchette's plea in this case, there is no tactical reason for the defense to impeach that witness. In such a case, the prosecution should, subject to MRE 607, 609, and 403, be able to impeach the witness with disclosure of a plea bargain where relevant to the witness' credibility. Any other rule elevates form over substance and keeps relevant evidence from the jury, despite the fact that not a single consideration of policy or equity is advanced for its adoption.

There was no objection to the prosecutor's initial inquiry into Burchette's plea. Since no manifest injustice has been shown, that inquiry cannot be the basis for reversal of Mr. Standifer's conviction. The fact that Burchette admitted the offense to the police and pled guilty, then at trial denied committing the offense that was the basis of the plea, has a clear bearing on his credibility. Since the prosecution elicited discussion of the plea a second time because Burchette unexpectedly testified in favor of Standifer, there was no error in relation to this second inquiry into his plea which would require reversal. Indeed, while the initial inquiry may have been error under MRE 607, it would be harmless error, even if an objection had been made, in light of the later permissible admission of the plea for impeachment purposes.

V

CONCLUSION

Defense counsel had the ability to correct any misconception held by the jury which he wished to correct concerning Mr. Burchette's plea bargain. He quite properly determined that it was not in his client's interest to do so. Defense counsel cross-examined Burchette concerning the plea bargain at issue in this case, but made no attempt to clarify the factors complained of on appeal because his examination had as its raison d'être not the impeachment of Burchette, but rather the theory that Burchette alone among the other inmates should be believed. Therefore, we reverse the judgment of the Court of Appeals and reinstate the defendant's conviction.

WILLIAMS, C.J., and BRICKLEY, J., concurred with BOYLE, J.

RILEY, J. (*concurring*). I am in agreement with the conclusion reached by Justice BOYLE in Part v for the reasons stated in Part iv (NO MANIFEST INJUSTICE) of her opinion, to the extent that it relies upon the no manifest injustice analysis. Thus I concur.

LEVIN, J. (*dissenting*). The defendant was convicted by a jury of criminal sexual conduct in the first degree for an act committed on October 25, 1981.[1] The Court of Appeals reversed and remanded for a new trial.[2] We would affirm.

Standifer, Charles W. Burchette, Jr., and another inmate of the Monroe County jail had oral sex with Thomas Hart, another inmate. The disputed factual question was whether Hart volunta-

---

[1] MCL 750.520b(1)(d); MSA 28.788(2)(1)(d).

[2] The opinion was not reported.

rily engaged in the sexual acts or, as the people contended and the jury found, was forced or coerced to do so.

The Court of Appeals reversed Standifer's conviction on the authority of this Court's decision in *People v Lytal,* 415 Mich 603, 605, 612; 329 NW2d 738 (1982), where this Court held that it was error to allow introduction of evidence that an accomplice was convicted for his role in the criminal enterprise.

In *Lytal,* this Court said that "[i]t is an established rule of law that the conviction of another person involved in the criminal enterprise is not admissible at defendant's separate trial." The prosecutor had sought to defend the admission of the evidence on the ground that under the rule of *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), he was obligated to show the nature of any consideration offered for the testimony of an accomplice. This Court responded that "no promises were made to [Lytal's alleged accomplices]—there was no consideration." The Court continued: "The prosecutor is not obliged to show that no consideration was offered for a witness's testimony or, indeed, whether the witness, if charged and if an accomplice, was convicted or acquitted. The prosecutor is only obliged to disclose any consideration offered to or received by the witness. That can be done without adverting to whether the witness was, if charged, convicted."

The prosecutor contends that the instant case is different because here consideration was offered to and accepted by Burchette, who the prosecutor claimed forced Hart to engage in a sexual act with Standifer.

I

Burchette pled guilty on March 29, 1982, to a

charge of CSC III, committed against Hart on November 8, 1981, and to a charge of breaking and entering an unoccupied dwelling, on the understanding that he would give truthful testimony in the instant case charging Standifer with CSC I committed on October 25, 1981, that the charge that he had participated with Standifer in committing the October 25 offense would be dismissed, and that the prosecutor would recommend minimum sentences of three years.

Standifer's trial began on June 7, 1982. On direct examination, Burchette responded affirmatively to questions by the prosecutor whether he had entered a plea of guilty to a charge of "criminal sexual conduct in the third degree" "involving Thomas Hart," reduced from first degree, and was currently serving a sentence of three and one-half to fifteen years. There was no objection by Standifer's lawyer.

The prosecutor did not bring out that Burchette's plea of guilty was for an act of criminal sexual conduct that occurred about two weeks after the act for which Standifer was standing trial.

Burchette testified that he did not see Standifer and Hart engage in a sexual act. The prosecutor was permitted to impeach Burchette's testimony by evidence of prior statements made by him to a police officer. On redirect, Burchette again acknowledged that he had pled guilty to having forced Hart to perform a sexual act.

The prosecutor thus was able to paint a picture of Standifer's guilt by association with Burchette, who in fact had pled guilty of having committed a sexual act other than the one with which Standifer was charged.

## II

The disclosure was incomplete and misleading and therefore cannot be justified on the basis that the prosecutor was seeking to discharge his obligations under *Atkins.*

It is a familiar principle that preservation of error does not require reversal when the error is harmless. Neither does the failure to object preclude reversal.[3]

The Court of Appeals did not err in ordering a new trial in the instant case under the circumstances that the disclosure was incomplete and misleading.

The prosecutor reinforced the implication of guilt by association during further questioning of Burchette on redirect whether he had pled guilty to forcing Hart to engage in a sexual act, and argument to the jury:

> The only testimony that we have are [sic] Mr. Burchette's, which I would ask you to totally disregard—you saw him on the stand. A person who has *pled guilty* to forcing Mr. Hart to give him a head job, he comes before you and says *it* never happened, I never forced him. [Emphasis supplied.]

It is apparent that the prosecutor did not seek merely to impeach Burchette's credibility by showing that he had a prior felony conviction for third-degree criminal sexual conduct.

The omission that Burchette's plea of guilty was of an offense other than the one with which Standifer was charged left the inaccurate impression

---

[3] See *People v Holmes,* 292 Mich 212, 215; 290 NW 384 (1940); *People v Kelsey,* 303 Mich 715, 719; 7 NW2d 120 (1942); *People v Steeneck,* 247 Mich 583, 586; 226 NW 231 (1929); *People v Kelly,* 423 Mich 261; 378 NW2d 365 (1985).

that Burchette had pled guilty of forcing Hart to commit a sexual act with Standifer, contrary to Burchette's testimony at the trial that he had not participated with Standifer in committing a sexual act with Hart or observed them in a sexual act.

### III

The argument in the opinion for reversal that a prosecutor may impeach the credibility of a witness charged as an accomplice when he fails to give anticipated testimony by showing "consideration given" by the prosecutor to the witness in the form of charge reductions was not made by the trial prosecutor or by the people in this Court, and, thus, there has been no adversary briefing or argument by the parties.

The opinion for reversal does not explain how "consideration given" by the prosecutor to Burchette tended to discredit Burchette's testimony.[4]

[4] The argument in the opinion for reversal begins with an incorrect premise. The prosecutor "inquir[ed] into the consideration" for Burchette's pleas of guilty before Burchette testified favorably to Standifer, and thus *before* Burchette became a "recanting witness." The prosecutor did not "inquir[e] into the consideration" in an effort to impeach a recanting witness.

Nor did the trial prosecutor claim, nor in their brief in this Court did the people argue, that a recanting witness may be impeached on the basis of the "consideration given" by the prosecutor. There thus has been no adversary briefing in respect to the arguments made in this regard in the opinion for reversal.

The prosecutor sought to impeach Burchette by showing his prior inconsistent statement to the police, and, as expressed in the people's brief in this Court, by referring "to Burchette's plea of guilty as being another prior inconsistent statement . . . ."

While prior statements are admissible to impeach a witness' credibility when he testifies inconsistently, it is questionable whether a prosecutor's expectation of favorable testimony from a witness or his belief in the defendant's guilt becomes admissible evidence on the basis of "consideration given" in such expectation or belief when the witness testifies unfavorably and the prosecutor asserts "we got burned."

The issue raised and dealt with in the opinion for reversal is obscured because the evidence of "consideration given" was admitted

IV

## The fundamental question adumbrated by state-

to show, not what might induce Burchette to testify favorably for Standifer, but, rather, what might induce him to provide testimony anticipated to be favorable to the people.

The issue raised and dealt with in the opinion for reversal would be clearer if Burchette had, before the trial, advised the prosecutor that he would testify, contrary to his prior statement, favorably to the defense, and the defense, aware of "consideration given" to Burchette, had stated that it would not inquire into the consideration and had moved the trial court for an order in limine directing the prosecutor not to inquire into the consideration given. The opinion for reversal does not explain on what basis the trial judge could have concluded that the consideration given by the prosecutor to Burchette would have induced Burchette to testify favorably for Standifer, or on what other basis the "consideration given" by the prosecutor tended to discredit Burchette's testimony. Surely the prosecutor did not expect that the consideration given to Burchette would or might induce him to testify favorably for Standifer. That being the prosecutor's evaluation, it does not appear on what basis the trial judge could properly have concluded or the opinion for reversal can properly argue that the jury should have been permitted to conclude that Burchette's testimony for Standifer was discredited by the prosecutor giving Burchette consideration in exchange for testimony against Standifer.

The opinion for reversal states:

We conclude that neither *Lytal* nor *Atkins* precludes the showing of consideration to, and conviction of, an "accomplice" witness where a favorable plea bargain creates the possibility of witness bias . . . . [*Ante*, pp 559-560.]

Burchette was not "an accomplice witness." He was, indeed, charged as an accomplice, but the charge was dismissed as part of "a favorable plea bargain." That the prosecutor *charged* Burchette as an accomplice to the commission of the offense with which Standifer was charged, and agreed to the dismissal of the charge that he aided or abetted Standifer in committing the offense charged against Standifer, is of no probative value and not admissible.

The rule is well-established (see Part IV) that the *conviction* of an accomplice would not be admissible at the trial of the person he was convicted of aiding and abetting; all the more clearly, a *charge* that the witness was an accomplice and that the charge was dismissed as part of a plea bargain may not be admitted as evidence that the witness did in fact aid or abet commission of the offense.

Nor did the prosecutor show that Burchette was charged as an accomplice to the offense charged against Standifer or that consideration was given to Burchette as an accomplice. Burchette, again, was not convicted as an accomplice of the offense charged against Standifer; the charge that he was an accomplice (which could not be shown) was dismissed.

ments in the opinion for reversal is whether the rule of law that bars evidence of an alleged accomplice's conviction on the issue of the guilt of a defendant separately tried will be enforced or undermined.

A

In *People v Lytal, supra,* p 612, this Court said that "[i]t is an established rule of law that the conviction of another person involved in the criminal enterprise is not admissible at defendant's separate trial." *Lytal* cited *People v Crawl,* 401 Mich 1, 33; 257 NW2d 86 (1977) (opinion of LEVIN, J.), which relied on a number of decisions of other state courts and of United States Courts of Appeals as support for the statement that "an accomplice's plea of guilty or conviction following a trial is not admissible against another person." That statement finds further support in 2 Wharton, Criminal Evidence (12th ed), § 439, p 215, where it is stated that "as a general rule, the fact that a confederate or co-conspirator of the defendant pleaded guilty, or has been found guilty, is inadmissible on the issue of the guilt of the defendant who is separately tried."

The rule is well-supported in cases decided since *Crawl* and *Lytal* were decided. In *Kwallek v State,* 596 P2d 1372, 1375-1376 (Wy, 1979), the Supreme Court of Wyoming said that such evidence is inadmissible "because it suggests that since the confederate is guilty, the defendant must also be guilty, and this inference violates the defendant's right to have his trial on its own merits."[5]

---

[5] Similarly, see *State v Robertson,* 219 Neb 782; 366 NW2d 429 (1985); *Tipton v Commonwealth,* 640 SW2d 818 (Ky, 1982); *People v Sullivan,* 72 Ill 2d 36; 377 NE2d 17 (1978); *United States v Miranda,* 593 F2d 590 (CA 5, 1979). See also *Ivy v State,* 301 So 2d 292 (Miss,

We find no authority to the contrary. All courts agree that an accomplice's plea of guilty or conviction following a trial is not admissible against another person as substantive evidence of the other person's guilt. The only question in this regard that has occupied the courts in deciding particular cases is whether a violation of the rule is reversible error.[6]

Judge Goodrich, speaking for the United States Court of Appeals for the Third Circuit, said that, although a fellow conspirator's plea of guilty "is highly relevant upon the question of the guilt of another alleged conspirator," "[t]his is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore, Evidence, § 1171 *et seq.* (3d ed, 1940)." *United States v Toner,* 173 F2d 140, 142 (CA 3, 1949). Judge Goodrich continued:

> The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, *not by what has happened with regard to a criminal prosecution against someone else.* [Emphasis supplied.]

In *Lytal,* this Court implemented that principle

1974); *State v Kerley,* 246 NC 157; 97 SE2d 876 (1957); *State v Underwood,* 248 Iowa 443; 80 NW2d 730 (1957).

[6] The cases are collected in Anno: *Prejudicial effect of prosecuting attorney's argument or disclosure during trial that another defendant has been convicted or has pleaded guilty.* 48 ALR2d 1016.

in rejecting a prosecutor's attempt to defend the admission of evidence of the conviction of alleged accomplices on the ground that he was obliged under the rule of *People v Atkins, supra,* to show the nature of any consideration offered for their testimony. Because the accomplices had testified that no promises were made to them and, thus, there was no consideration, *Atkins* did not justify admission of evidence of the accomplices' convictions. We said:

> The prosecutor is not obliged to show that no consideration was offered for a witness's testimony or, indeed, whether the witness, if charged and if an accomplice, was convicted or acquitted. The prosecutor is only obliged to disclose any consideration offered to or received by the witness. That can be done without adverting to whether the witness was, if charged, convicted. [*Lytal, supra,* p 612.]

B

Although disposition of this appeal does not require the Court to say more, it is apparent that there is need to address recurrent problems that arise when a prosecutor, in asserted discharge of his obligations under *Atkins,* introduces evidence of the conviction of an alleged accomplice.

These problems would be largely avoided if this Court were to adopt a rule concerning the manner in which any consideration for a witness' testimony may be shown that would require a prosecutor to refrain from disclosing the nature of the charges originally lodged against an alleged accomplice or the nature of the convictions ulti-

mately obtained unless, perhaps,[7] the defendant were to insist on their disclosure. If such a rule had been in force when the trial in this case began, the prosecutor would, consistent with such rule, have disclosed only that Burchette (i) had been charged with three felonies, (ii) faced, on conviction of one, a maximum sentence of ten years,[8] and, on conviction of the other two, maximum sentences of life in prison,[9] (iii) as part of a plea bargain, pled guilty to the ten-year maximum offense, one of the life sentence offenses was dismissed, and, in lieu of the other life sentence offense, pled guilty to a lesser offense with a maximum sentence of fifteen years, and (iv) was serving a sentence of three years to ten years on one offense and 3½ to fifteen years on another.

The rule requiring the prosecutor to disclose any consideration given for courtroom testimony should not be turned into a sword to be used against the defendant by allowing the admission of evidence that but for the consideration offered would not be admissible. The prosecutor's obligation to disclose any consideration could in the manner described be fully discharged without undermining the rule that a defendant's guilt or innocence should not be determined on the basis of "what has happened with regard to a criminal prosecution against someone else."

It will ordinarily be of no advantage to the defendant to disclose to the jury whether the original charge against the witness was for com-

---

[7] It might be asserted that a rule barring disclosure of the nature of the charges or of the offenses of which the alleged accomplice was convicted might in particular circumstances violate the defendant's rights under the Due Process and Confrontation Clauses.

[8] Burchette was charged with breaking and entering an unoccupied building. MCL 750.110; MSA 28.305.

[9] Burchette was charged with two offenses of criminal sexual conduct in the first degree. MCL 750.520b; MSA 28.788(2).

mitting the offense of X, Y, or Z. The important information to be disclosed to the jury is that the witness received a benefit, and the extent of the benefit. The benefit is the reduced charge or sentence, not the nature of the originally charged or reduced offenses.

If such a rule had been in force when the trial in this case began, the prosecutor could not have questioned Burchette with regard to whether he had pled guilty to a "criminal sexual conduct" charge "involving Thomas Hart," and thus there would have been no opportunity to fail to disclose to the jury that the criminal sexual conduct offense of which Burchette pled guilty was for an act of criminal sexual conduct that occurred about two weeks after the act for which Standifer was standing trial.

We would adopt such a rule for cases tried after the announcement of the decision in this case so as to reduce the risk that a defendant will be convicted on the basis of "what has happened with regard to a criminal prosecution against someone else."[10]

CAVANAGH, J., concurred with LEVIN, J.

ARCHER, J., took no part in the decision of this case.

---

[10] Evidence inadmissible on one basis might indeed be admissible on another. It is beyond the scope of this opinion to consider whether evidence of an alleged accomplice's conviction of the same criminal act charged against the defendant might be admissible in a particular case to impeach the witness' credibility under MRE 609. In order to enforce rather than undermine the rule stated in *Crawl* and adopted in *Lytal,* it might be appropriate to exclude reference to the specific charge of which the witness has been convicted (MRE 403, 609[a][2]), even when the judge decides that the evidence of the conviction should otherwise be admitted pursuant to MRE 609.

In the instant case, the evidence of the consideration was not offered for impeachment purposes under MRE 609, but rather in purported compliance with the prosecutor's obligation under *Atkins* to disclose any consideration.