PEOPLE v DOWDY

PEOPLE v PATTEN

Docket Nos. 159129, 161111. Submitted February 14, 1995, at Detroit. Decided June 23, 1995, at 9:10 A.M. Leave to appeal sought.

Thomas D. Dowdy was convicted by a jury in the Recorder's Court for the City of Detroit, Richard L. Cunningham, J., of two counts of first-degree felony murder, one count of first-degree premeditated murder, two counts of armed robbery, one count of arson, and one count of possession of a firearm during the commission of a felony. He appealed (Docket No. 159129).

Jermaine Patten was convicted by a jury in the Recorder's Court for the City of Detroit, Richard L. Cunningham, J., of three counts of first-degree premeditated murder, one count of attempted murder, three counts of armed robbery, one count of assault with intent to commit armed robbery, one· count of arson, and one count of felony-firearm. He appealed (Docket No. 161111). The appeals were consolidated.

The Court of Appeals *held:*

1. The trial court did not err in denying Dowdy's motion to suppress evidence found by the police in a search of the apartment where he was arrested. A reasonably cautious person could find a substantial basis for probable cause for the search.

2. The police had probable cause to arrest Dowdy without the evidence gained in the alleged illegal search. The exclusionary rule was not intended to grant criminal suspects protection from statements made outside their premises where the police have probable cause to arrest the suspects for committing a crime. The exclusionary rule does not bar the prosecution's use of a defendant's statement made outside the defendant's home, even though the statement is made after an unconstitutional entry into the defendant's home to effect the arrest.

3. At the request of defense counsel, the prosecutor or the judge must disclose any actual or reasonably expected immu-

REFERENCES

Am Jur 2d, Evidence §§ 601, 602; Searches and Seizures §§ 118, 122. See ALR Index under Exclusion and Suppression of Evidence; Search and Seizure.

nity offered to obtain the testimony of an accomplice or a coconspirator. Where the defendant objects to the introduction of evidence regarding a plea agreement by an accomplice, the trial court must weigh the prejudice that would result from the admission of the evidence.

4. Probable cause existed for the search warrant even without the evidence obtained in the initial entry without a warrant.

5. Patten was not denied his right to a fair trial as a result of the prosecution's introduction of evidence of an accomplice's plea agreement.

Affirmed.

WHITE, P.J., concurring, stated agreement with the majority opinion except with regard to whether Dowdy's confession should have been suppressed. She concurs with the result only with regard to that issue.

1. CRIMINAL LAW — SEARCHES AND SEIZURES — PROBABLE CAUSE.

The Court of Appeals, in reviewing whether probable cause existed for the issuance of a search warrant, must determine whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause; Michigan courts consider identified citizens and police officers to be presumptively reliable with regard to the information supplied in support of a search warrant.

2. CRIMINAL LAW — SEARCHES AND SEIZURES — PROBABLE CAUSE.

The "probable cause" for a search is concerned with whether certain identifiable objects probably are to be found at the present time in a certain identifiable place.

3. CRIMINAL LAW — EVIDENCE — EXCLUSIONARY RULE — SEARCHES AND SEIZURES — PROBABLE CAUSE.

Where the police have probable cause to arrest a defendant, the exclusionary rule does not bar the prosecution's use of a statement made by the defendant outside the defendant's house, even though the statement was made after an unconstitutional entry into the defendant's home to effect the arrest.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Brian T. Moody,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for Thomas Dowdy.

*Arthur L. Morman,* for Jermaine Patten.

Before: WHITE, P.J., and SMOLENSKI and R. J. DANHOF,[*] JJ.

PER CURIAM. In Docket No. 159129, a jury convicted defendant Dowdy of two counts of first-degree felony murder, MCL 750.316(1)(b); MSA 28.548(1)(b), one count of first-degree premeditated murder, MCL 750.316(1)(a); MSA 28.548(1)(a), two counts of armed robbery, MCL 750.529; MSA 28.797, one count of arson, MCL 750.72; MSA 28.267, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). In Docket No. 161111, defendant Patten was convicted by a jury of three counts of first-degree premeditated murder, one count of attempted murder, MCL 750.91; MSA 28.286, three counts of armed robbery, one count of assault with intent to commit armed robbery, MCL 750.89; MSA 28.284, one count of arson, and one count of felony-firearm. Both defendants appeal their convictions as of right. We agreed to consolidate these cases and we now affirm the convictions.

I

On March 31, 1992, Vincent Vasquez, Roberto Garza, and another man were in an apartment from which crack cocaine was being sold. Later that evening, three other men arrived and announced that they were robbing the men in the apartment. The three robbers bound Vasquez, Garza, and the other man using duct tape, beat

_____
[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

them, and repeatedly asked them where the money was kept. The three robbers waited for the arrival of another man, Marcus Ferguson. When Ferguson arrived, the robbers beat him, took his money, and tied him with duct tape. The robbers then splashed gasoline on the victims and lit them afire. Ferguson, Garza, and the other man died. Vincent Vasquez survived.

At the hospital, Vasquez told the police that he knew one of the robbers was Johnny Gipson. He described Gipson and explained that he had worn a University of Michigan Wolverine jacket with a slash across the back. Vasquez also testified that he knew the other robbers were Gipson's uncles. Although he did not know the names of Gipson's uncles, he had met them before and knew their nicknames. At trial, he identified the two uncles as defendant Dowdy and defendant Patten.

Vernon Garza, the brother of Roberto, had been at the apartment earlier that night. When Vernon Garza arrived, Johnny Gipson, an acquaintance of the victims, was already there. Gipson had just come to the lobby to let two other men into the building. Garza had never seen the two men before, but he already knew Johnny Gipson. At trial, Garza identified the two other men as defendant Dowdy and defendant Patten.

The police questioned Vasquez at the hospital. Vasquez described the three robbers and gave their nicknames. He told the police that Vernon Garza would know where the men lived. The police went to an address supplied by Vernon Garza and knocked on the door. The police claim that a resident of the house voluntarily allowed them to enter. The police then arrested everyone in the house, including Johnny Gipson and defendant Dowdy. According to the police, while they were arresting the residents, a baby started crying

upstairs. When one resident asked if he could take care of the baby, the police accompanied him upstairs. On a bed in one of the rooms upstairs, they saw a University of Michigan jacket matching the one described by Vasquez. The police admitted that, at this time, they had neither an arrest warrant nor a search warrant.

At this point, the police called Recorder's Court judge Richard Cunningham and asked him to sign a search warrant for the house. Judge Cunningham discussed some items in the warrant and expressed his concern about the existence of probable cause to search the house. Judge Cunningham testified that he only determined that probable cause existed after the police told him that they had entered the house previously and seen the University of Michigan jacket. He stated that, without the evidence from the prior entry, there was no probable cause. With the warrant signed by Judge Cunningham, the police entered the house a second time and confiscated the University of Michigan jacket.

Recorder's Court judge Robert Evans heard the motion to suppress the evidence found in the second visit to the house. Judge Evans found that the initial entry without a warrant was improper. Judge Evans stated that he did not believe the residents of the home consented to let the police in. He also disputed police testimony that they only went upstairs to take care of the crying baby. However, Judge Evans stated that probable cause existed for the search warrant even without the evidence from the initial entry without a warrant.

Both defendant Dowdy and defendant Patten confessed to the crimes while in police custody. At trial, Johnny Gipson testified for the prosecution. Separate juries convicted the defendants.

## II

Defendant Dowdy first argues that the trial court erred in denying his motion to suppress evidence found in the search. He claims that the trial court, with Judge Evans presiding, was required to grant deference to Judge Cunningham's decision. At the suppression hearing, Judge Cunningham testified that, without the evidence that the officers saw the University of Michigan jacket in the house during the first visit, he would not have signed the warrant. We do not consider Judge Cunningham's testimony to be a "decision" to which the trial court must grant deference.

Appellate scrutiny of a magistrate's decision involves neither review de novo nor application of an abuse of discretion standard. When reviewing whether probable cause existed for issuance of a warrant, this Court must ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause. *People v Russo,* 439 Mich 584, 603; 487 NW2d 698 (1992).

Vincent Vasquez told the police that the perpetrators included a man named John and his two uncles. During the crime, John wore a University of Michigan Wolverine jacket with a slash across the back. Vasquez informed the police that Vernon Garza knew where John lived. Vernon Garza then showed the police the house where John lived. The police had the names of both Vasquez and Garza. Identifiable citizens and crime victims are presumably reliable. *People v Powell,* 201 Mich App 516, 522-523; 506 NW2d 894 (1993). We find that a reasonably cautious person could find a substantial basis for probable cause for the search.

Defendant Dowdy argues that the trial court based its determination on erroneous facts because

it stated that John had been seen at the house a few hours earlier. Although the trial court did indicate that John was at the house a few hours before the warrant was issued, and that information was not in the search warrant, this error was harmless. Probable cause to search is concerned with whether certain identifiable objects are probably to be found at the present time in a certain identifiable place. *Russo, supra* at 605. Regardless of whether John was spotted at the house a few hours earlier, the police would probably find John's jacket at John's house.

### III

Next, defendant Dowdy argues that his custodial confession should have been suppressed. Defendant Dowdy was arrested during the initial entry into the house without a warrant. Defendant Dowdy maintains that, because the initial entry into the home was unconstitutional, his subsequent statement should be suppressed as a result of that illegal entry.

In *New York v Harris,* 495 US 14; 110 S Ct 1640; 109 L Ed 2d 13 (1990), the police entered the defendant's home and arrested him with neither a warrant nor consent to enter the home. Although probable cause existed for the arrest, the defendant argued that, because the entry into the home was invalid, the exclusionary rule barred the custodial confession because it resulted from the illegal entry into the home. The United States Supreme Court ruled that the exclusionary rule does not bar the prosecution's use of a defendant's statement made outside his home, even though the statement is made after an unconstitutional entry into the defendant's home to arrest him. *Id.*

The Supreme Court reasoned that the police

could have legally arrested the defendant on his doorstep. The arrest was legal. The statement was the product of an arrest and being in custody, and not the fruit of the fact that the arrest was made in the house instead of somewhere else. *Id.* at 19-21.

Defendant Dowdy acknowledges that *Harris* would control this case. Rather than follow *Harris,* defendant encourages this Court to adopt a broader view. of the exclusionary rule for the Michigan Constitution. In Fourth Amendment cases, both this Court and the Supreme Court have held that the Michigan Constitution does not provide more protection than the United States Constitution. *People v Faucett,* 442 Mich 153, 158; 499 NW2d 764 (1993); *People v Shields,* 200 Mich App 554, 557, n 1; 504 NW2d 711 (1993). We find no reason to apply a different standard for the Michigan Constitution in this case.

Defendant Dowdy argues that application of *Harris* would undermine the deterrent effect of the exclusionary rule. We disagree. In this case, the exclusionary rule operated to suppress the evidence discovered in the initial entry into the home. If probable cause had not existed for the search warrant absent the evidence discovered during the initial entry, then that search would have been declared invalid and all evidence from that search would have been excluded from the trial. Exclusion of evidence would certainly deter police from conducting illegal searches.

The police had probable cause to arrest defendant Dowdy without the evidence from the search. Vincent Vasquez told the police that one of Johnny Gipson's uncles participated in the crime. Before the initial police search, the police stated that they had defendant Dowdy's name and his physical description. This would justify a fair-

minded person of average intelligence in believing that the suspected person has committed a felony. *People v Richardson,* 204 Mich App 71, 79; 514 NW2d 503 (1994). Had defendant Dowdy been arrested just outside the house, the admissibility of his confession would not be an issue. We adopt the *Harris* rationale that the exclusionary rule was not intended to grant criminal suspects protection for statements made outside their premises where the police have probable cause to arrest the suspects for committing a crime. *Id.* at 17-18.

IV

We now address the claims of defendant Patten. Because defendant Patten failed to object to the introduction of his unsolicited statement to the police about getting shot in the courtroom, this issue is not preserved for review. *People v Rollins,* 207 Mich App 465, 468; 525 NW2d 484 (1994).

Defendant Patten also challenges the prosecution's questioning of the accomplice witness. Johnny Gipson testified for the prosecution. On direct examination, the prosecution asked Gipson about the sentence he received in exchange for testifying. Gipson responded that he did not receive any consideration in exchange for testifying. Defendant Patten argues that, by allowing testimony regarding Gipson's plea agreement, the trial court denied defendant Patten his right to be tried solely on the evidence against him.

Our Supreme Court has considered this issue in several contexts. In *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), the Supreme Court held that when an accomplice or coconspirator has obtained, or is reasonably likely to obtain, immunity or other leniency from prosecution, defense counsel may request that the prosecution disclose

the immunity agreement to the jury. Upon defense counsel's request, the prosecution must disclose the immunity agreement. However, the prosecutor was not required to disclose future possibilities of leniency for the jury's speculation. *Id.* at 173-174.

In *People v Lytal,* 415 Mich 603; 329 NW2d 738 (1982), the Supreme Court stated that evidence of the conviction of an accomplice was not admissible at the defendant's separate trial. The Court based its decision on the proposition that a defendant is entitled to have his guilt determined solely on the evidence against him. A jury could impute guilt to a defendant because another jury convicted the accomplice of the same crime. See *People v Crawl,* 401 Mich 1, 33; 257 NW2d 86 (1977) (opinion by LEVIN, J.).

In *People v Standifer,* 425 Mich 543; 390 NW2d 632 (1986), a plurality of the Supreme Court distinguished between the introduction of evidence regarding an accomplice's conviction in a prior trial and the introduction of evidence regarding the accomplice's plea agreement. *Id.* at 553. The plurality held that the trial court could have weighed the prejudice in the admission of the evidence of the plea agreement if the defendant had objected to the introduction of that evidence by the prosecution. The plurality reasoned that the defendant's failure to object was a strategic decision. The defendant probably wanted to use the plea agreement to impeach the accomplice's credibility. *Id.* at 556. In *People v Manning,* 434 Mich 1; 450 NW2d 534 (1990), the Court could not obtain a majority to resolve the possible conflict between *Atkins* and *Lytal.*

We adopt the reasoning of the plurality in *Standifer.* In this case and in *Standifer,* the prosecution questioned the accomplice about his guilty plea, not about a conviction in a trial. In both cases, the

defendants did not object to the introduction of evidence of the plea agreement, and then cross-examined the accomplices about that plea agreement. Although defendant Patten now claims that evidence of this plea agreement was prejudicial, his counsel chose to discuss it at length during cross-examination. This indicates that defendant Patten considered the evidence of the plea agreement to be favorable to his case. If defendant Patten had not intended to discuss the accomplice's reasons for testifying, he could have objected when the prosecution began to introduce the evidence of the plea. We will not allow a defendant to use the plea information to undermine the accomplice's credibility at trial, and then allow him to argue on appeal that introduction of the evidence of the plea was prejudicial.

V

In summary, even without the evidence from the initial entry without a warrant, probable cause existed for the search warrant. We find that the holding in *New York v Harris* also applies to the Michigan Constitution. Finally, defendant Patten was not denied his right to a fair trial when the prosecution introduced evidence of Gipson's plea agreement.

Affirmed.

WHITE, P.J. *(concurring)*. I join in the majority opinion except with regard to Part III. I concur in the result only with regard to Part III.