# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FELANDO DAMONE HUNTER,

Defendant-Appellant.

UNPUBLISHED
October 15, 2015

No. 321302
Wayne Circuit Court
LC No. 13-009274-FC

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), first-degree home invasion, MCL 750.110a(2)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life imprisonment for the first-degree felony murder conviction, 13 to 20 years' imprisonment for the first-degree home invasion conviction, and two years' imprisonment for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm.

## A. FACTS

This case arises from the robbery and murder of Joshua Hayes at his apartment in Detroit, Michigan, on August 10, 2012. Defendant and his friend Jerry Pringle, along with Pringle's friends Amiri Naylor and Jaromeo Gibson, and Pringle's girlfriend Chanel McDonald, conceived a plan to rob Hayes at his apartment. McDonald, the only codefendant who knew Hayes, had enjoyed a friendly relationship with him in the past.

Sometime in the early morning hours of August 10, 2012, Pringle drove all of the codefendants to Hayes' apartment building. At Pringle's urging, McDonald sent a text message to Hayes around 1:00 a.m. and asked if she could come over. After exchanging a number of text messages, Hayes agreed to let McDonald come to his apartment. McDonald got out of the car and met Hayes at the apartment building's front door, then proceeded upstairs to his apartment. She engaged in sexual relations with Hayes, breaking off intermittently to exchange text messages with Pringle. At some point, McDonald told Hayes that she had left her wallet in her sister's car and that her sister had just arrived at Hayes' apartment building to return it. McDonald got dressed and went downstairs to let the rest of the codefendants inside.

-1-

Defendant and Gibson stayed downstairs in the first-floor hallway, but McDonald took Pringle up to Hayes' apartment. Pringle told McDonald to go back inside and engage Hayes in sexual activity once more, but to make "a lot of noise" to signal them once she was ready for them to come in and rob him. McDonald left Hayes' apartment door slightly ajar when she reentered the apartment. Pringle went back to the first-floor hallway and brought the other codefendants upstairs. Defendant was armed with a long gun while Pringle and Gibson both carried .38-caliber revolvers.

While the codefendants waited outside the door, McDonald resumed having sex with Hayes and then gave a prearranged signal, and the rest of the codefendants entered the apartment and turned on the lights. According to McDonald, defendant looked at Hayes and said, "Yeah, b----. Yeah, b----, you know what time it is." Both defendant and Pringle then shot Hayes in the head, though none of the witnesses were certain who fired first. One bullet entered the right side of Hayes' head, close to his eyebrow, and penetrated his brain. The second bullet hit Hayes in the chin, fractured his jaw, and went through his neck. Police failed to recover the second bullet, but later analysis confirmed that the first bullet had been fired from a rifle. After killing Hayes, the codefendants ransacked the apartment. They left the apartment with a pair of sneakers, a quantity of marijuana, some prescription medication, one silver handgun, and $250 in cash.

Hayes' body was not discovered until later that afternoon, and Detroit Police investigators were unable to name a suspect in his murder. Then, in November 2012, Detroit Police Officer Allen Williams learned that McDonald was a potential witness in an unrelated homicide. On November 6, 2012, McDonald accompanied Officer Williams to the police station for an interview. McDonald, apparently under the mistaken belief that Officer Williams wanted to discuss Hayes' murder, immediately began sharing details about the robbery and killing. Officer Williams was unfamiliar with Hayes' case so he stopped McDonald, located the Hayes file, and "found that she was actually talking about a case that had been sitting for three months that was wide open." Officer Williams advised McDonald of her rights, took her to an interview room with recording equipment, and interviewed her about the Hayes murder for the next three hours. McDonald described her role in the incident to Officer Williams, and she also named defendant, Pringle, Naylor, and Gibson and discussed their involvement in the murder.

The four codefendants reached plea agreements with the prosecution before defendant's trial, and McDonald, Naylor, and Gibson all testified at trial and implicated defendant in the murder. Defendant was convicted and sentenced as set forth above and he appeals as of right.

B. ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor improperly vouched for the codefendants' credibility by pointing out that each pleaded guilty before defendant's trial and by remarking during her closing argument that Officer Williams realized that McDonald was telling the truth.

We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Generally, however, a court gives a prosecutor "great latitude regarding his or her arguments and conduct at trial." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). In determining whether a prosecutor's comments were improper, we "evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

### i. Codefendant's Plea Agreements

A prosecutor may not use evidence of the conviction of a defendant's accomplice as substantive evidence of the defendant's guilt, but "the guilty plea of an accomplice is admissible for impeachment or rehabilitation, where its use is appropriately limited." *People v Manning*, 434 Mich 1, 14; 450 NW2d 534 (1990). The prosecution "does not insinuate possession of information not heard by the jury" and expresses no personal opinion regarding a witness's veracity simply by calling a witness to testify under a plea agreement. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995) (citation and quotation marks omitted).

During her case-in-chief, the prosecutor discussed the plea agreements with each of the codefendants in turn. McDonald, Naylor, and Gibson all testified about the offenses to which they had pleaded guilty, their sentences under the sentencing agreements, and the requirement that they give truthful testimony against any codefendants in the case.

The prosecutor's references to the codefendants' plea agreements, including the specific fact that they had already pleaded guilty before defendant's trial, did not constitute prosecutorial misconduct or deprive defendant of a fair trial. The record indicates that the prosecutor discussed the plea agreements simply to inform the jury of the codefendants' roles in the crime and subsequent prosecution and to dispel any potential suspicion that they had fabricated their testimony. The prosecutor did not suggest any special knowledge of the codefendants' honesty, and the simple fact that she called the codefendants to testify did not constitute an improper endorsement of their credibility.

Additionally, while the prosecutor was the first to introduce evidence of the plea agreements, defense counsel clearly intended to use the agreements to argue that the codefendants would lie in exchange for lighter sentences. Defense counsel referenced the plea agreements time and again, including leading Naylor to admit on cross-examination that he received a "great deal" from the prosecution and declaring during her closing argument that the codefendants had "everything to gain by pointing a finger" at defendant. This Court "will not allow a defendant to use the plea information to undermine the accomplice's credibility at trial, and then allow him to argue on appeal that introduction of the evidence of the plea was prejudicial." *People v Dowdy*, 211 Mich App 562, 572; 536 NW2d 794 (1995).

Moreover, the trial court's detailed instructions regarding accomplice testimony cured any potential prejudice arising from the prosecutor's remarks. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) ("Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements . . . and jurors are presumed to follow their instructions" (citations omitted)). Here, the court instructed the jurors at length on the issue,

directing them to examine the testimony closely, consider the codefendants' potential bias or interest, determine if the promise of a lighter sentence could have influenced the codefendants' credibility, and to use caution before accepting the testimony. In short, the prosecutor did not commit misconduct that denied defendant a fair trial when she referenced the codefendants' plea agreements. *Brown*, 294 Mich App at 382.

*ii. Reference to "The Truth"*

During her closing argument, the prosecutor referenced the testimony of Officer Williams as follows:

> Officer Williams knows absolutely nothing about the homicide on East Congress until Chanel McDonald . . . gives it all up. . . . He gets the information from her about [the street where Hayes was murdered]. He stops her at that point. He goes and gets the file and realizes holy crap, she's telling me the truth about a homicide that DPD Homicide hadn't had any clues on, no leads.

The prosecutor's statement—that Officer Williams realized McDonald was telling the truth—did not constitute misconduct. Rather, the prosecutor was merely summarizing Officer Williams' testimony about his interview with McDonald and the manner in which he realized that McDonald was providing details about an open homicide. The prosecutor was not telling the jury that *she* considered McDonald's statement to be true, or that she personally vouched for it, but that Officer Williams had decided to question McDonald further once she had provided concrete details about the scene of Hayes' murder. The statement was therefore proper because it bore a direct relationship to Officer Williams' previous testimony. See *Seals*, 285 Mich App at 22. The prosecutor also intimated no special knowledge of McDonald's credibility by her isolated comment. Nor has defendant demonstrated that the innocuous remark affected the trial's outcome because the prosecutor was simply reminding the jurors of the testimony they had already heard from McDonald and Officer Williams. *Gaines*, 306 Mich App at 308. Finally, the trial court also instructed the jury that the attorneys' statements, questions, and arguments were not evidence and the instruction cured any potential prejudice. See *Unger*, 278 Mich App at 235. In short, the prosecutor's comment did not amount to misconduct that denied defendant a fair trial. *Brown*, 294 Mich App at 382.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that defense counsel's failure to challenge a potentially biased juror for cause, cross-examine the codefendants about the penalty they faced before they signed their plea agreements, and object to the prosecutor's alleged misconduct all fell below an objective standard of reasonableness and denied him the effective assistance of counsel.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *Id*. at 387. "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim."

*Id.* Because this Court denied defendant's motion for a remand for a *Ginther*[1] hearing,[2] our review is for mistakes apparent on the record. *Id.*

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by [counsel's] deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). To show prejudice, a defendant "must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different." *Gaines*, 306 Mich App at 300 (citation and quotation marks omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). More specifically, there is a strong presumption that defense counsel employed effective trial strategy, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation omitted), and we "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *Unger*, 278 Mich App at 242-243.

*i. Challenging the Juror*

A criminal defendant has a federal and state constitutional right to be tried by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. "Jurors are presumptively competent and impartial[,]" *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001), and "[t]he burden is on the defendant to establish that [a] juror was not impartial or at least that the juror's impartiality is in reasonable doubt[,]" *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961). When a potential juror swears that he or she will put aside preexisting knowledge and opinions, the initial presumption is that the juror is telling the truth. *People v Cline*, 276 Mich App 634, 638; 741 NW2d 563 (2007).

Counsel's decision relating to the selection of jurors is generally a matter of trial strategy. *Johnson*, 245 Mich App at 259. We are "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror" because trial counsel is in a better position to judge a potential juror's "facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258. Additionally, "[a] lawyer's hunches, based on [her] observations, may be as valid as any method of choosing a jury." *Id.* (citation and quotation marks omitted). In order to show that he or she was prejudiced by trial counsel's failure to

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Hunter*, unpublished order of the Court of Appeals, entered June 11, 2015 (Docket No. 321302).

challenge or remove a juror, a defendant must show that the outcome of the trial would likely have been different had the juror not deliberated. See *Hughes v United States*, 258 F3d 453, 458 (CA 6, 2001).

Defense counsel's failure to challenge the potential juror, (A.O.), for cause did not fall below an objective standard of reasonableness. *Walker*, 497 Mich at 895. At most, A.O.'s first response to the trial court's question about putting aside the memory of his past as a victim of a crime was somewhat equivocal. When the judge explained further and stressed the importance of leaving bias and prejudice "outside the courtroom door," A.O. unequivocally stated that he could do so. A.O.'s answer was sufficient to ensure that defendant received a fair trial, and defendant presents no evidence to rebut the presumption that A.O. was honest when he swore to deliberate according to the evidence and the applicable law. See *Irvin*, 366 US at 723; *Cline*, 276 Mich App at 638. Therefore, defendant fails to establish that A.O. was not impartial or that his partiality was in reasonable doubt. See *Miller*, 482 Mich at 550. Challenging A.O. for cause would thus have been meritless because Michigan court rules did not warrant his removal. See MCR 2.511(D) (providing that, among other considerations unrelated to this case, a juror may be removed for cause when he or she "is biased against a party or attorney," "shows a state of mind that will prevent the person from rendering a just verdict," or "has opinions . . . that would improperly influence the person's verdict"). Counsel is not required to advance a meritless position. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Moreover, defendant fails to establish that the jury's verdict would likely have been different but for A.O's presence on the jury where the prosecution introduced overwhelming evidence of defendant's guilt. See *Hughes*, 258 F3d at 458. In short, counsel's failure to challenge A.O. did not constitute ineffective assistance of counsel.

### ii. Cross-Examining the Co-Defendants

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Further, defense counsel's failure to question witnesses or present other evidence constitutes ineffective assistance "only when it deprives the defendant of a substantial defense[.]" *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation and quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation and quotation marks omitted).

Contrary to defendant's argument, defense counsel extensively cross-examined McDonald, Naylor, and Gibson, and questioned each of them about their plea agreements. In addition, the prosecutor disclosed the terms of all three plea agreements, both in her opening statement and through direct examination of the codefendants. Nevertheless, defendant maintains on appeal that defense counsel's failure to specifically note that the codefendants faced a potential sentence of life imprisonment without the possibility of parole deprived him of a substantial defense. The jurors, however, were keenly aware that the codefendants had all been charged with felony murder and that their reduced sentences under the plea agreements still resulted in sentences between 10 and 30 years. Defense counsel continually used the plea agreements in an attempt to show bias and fabrication, including eliciting an admission from Naylor that he received a "great deal" to testify. Given the circumstances of the case, defense

counsel's cross-examination of the codefendants did not deprive defendant of a substantial defense because it would not have made a difference at trial. See *Chapo*, 283 Mich App at 371. Consequently, defense counsel was not ineffective in this regard. *Russell*, 297 Mich App at 716.

### iii. Objecting to the Prosecutor's Remarks

Finally, defendant contends that defense counsel was ineffective in failing to object to the prosecutor's remarks regarding the codefendants' guilty pleas and Officer Williams' realization that McDonald was telling him the truth in their interview. As discussed earlier, however, the prosecutor's comments did not constitute misconduct and did not prejudice defendant's substantial rights by affecting the trial's outcome. Consequently, objecting to the remarks would have been meritless, and counsel is not deficient for failing to raise a meritless objection. *Chelmicki*, 305 Mich App at 69.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens